**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re<br><br>DEBORAH DEE STONE<br><br>Debtor. | ) | Case No. 24-12767 MER<br><br>Chapter 13 |
| DEBORAH DEE STONE,<br><br>Plaintiff,<br><br>v.<br><br>REAL ESTATE EQUITY EXCHANGE, INC; UNISON AGREEMENT CORP.; ODIN NEW HORIZON REAL ESTATE FUND LP; and UNISON INVESTMENT MANAGEMENT, LLC,<br><br>Defendants. | ) | Adversary No. 24-01181 MER |

**CORRECTED REPLY IN SUPPORT OF**
**MOTION TO DISMISS ADVERSARY COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT ........................................................................................................2

I. Plaintiff's Attempt to Prevent the Court from Considering the Contractual Terms and Factual Allegations of the Complaint Must Be Rejected. ..........................................2

II. Plaintiff's Legal Theories as to Why She Need Not Plead Facts Sufficient to State a Claim for Unconscionability Must Be Disregarded. ..........................................4

A. Unconscionability Claims are Properly Dismissed on the Pleadings. ..........................5

B. Plaintiff Does Not Plausibly Allege Procedural Unconscionability. ..........................6

C. Plaintiff Does Not Plausibly Allege Substantive Unconscionability. ..........................10

III. Plaintiff's Second Claim Should Be Dismissed Because She Does Not Allege an Unfair or Deceptive Practice that Significantly Impacts the Public. ..........................12

A. The Complaint Does Not Plausibly Allege an Omission with Particularity. ..........................12

B. Plaintiff Fails to Plead Reliance on a Materially False or Misleading Statement. ..........................13

C. Plaintiff Fails to Plead Significant Public Impact. ..........................15

IV. The Third, Fourth, and Fifth Claims Fail Because the Option Is an Option and Not a Loan. ..........................16

V. Having Withdrawn Her Request to Void the Agreement, Plaintiff's Request for Declaratory Relief Regarding Notarization is an Improper Advisory Opinion. ..........................19

VI. Plaintiff's Seventh Claim Fails Because the Option is Not Executory and Unison's Interest in the Option is Secured. ..........................20

A. The Option Is Not Executory. ..........................20

B. Unison's Interest is Secured. ..........................22

VII. Plaintiff's Eighth Claim Fails Because the Proof of Claim is Unambiguous. ..........................23

CONCLUSION ..........................24

Defendants Unison Agreement Corp., Real Estate Equity Exchange, Inc., Odin New Horizon Real Estate Fund LP, and Unison Investment Management, LLC (collectively, "Unison"), by and through their undersigned counsel, hereby file this reply in support of the Motion to Dismiss Adversary Complaint [Dkt. 14] (the "Motion" or "Mot."):[1]

## INTRODUCTION

Unison's Motion explained that Plaintiff's conclusory allegations are flatly contradicted by the documents and written communications on which her claims are premised and do not state a plausible claim to relief under Rule 12(b)6) or plead fraud with particularity under Rule 9(b). Plaintiff's opposition (the "Opposition") does not—and could not—correct these fatal deficiencies in the Complaint. For the reasons laid out in Unison's Motion and the Reply herein, the Complaint should be dismissed in its entirety.

Claim 1 (unconscionability) and Claim 2 (Colorado Consumer Protection Act ("CCPA")) must be dismissed because the Complaint does not identify any false statements or purported deception in Plaintiff's communications with Unison. Indeed, the documents submitted on the Motion reflect clear and repeated disclosure of all material terms of their agreement (the "Option"), and numerous acknowledgments by Plaintiff of the same. The lack of a public impact, given the fact that this a private dispute about one homeowner's contract with Unison, provides a second, and independent, basis for dismissal of the CCPA claim, which requires significant public impact.

Claims 3, 4, and 5, which rely upon statutes applicable only to loans, also fail because the Option is in fact an option and not a loan, as evident from the face of the Option and consistent with Colorado law. Plaintiff does not and cannot offer a reading of the language of the Option under which the Option's value is dependent on anything other than the market for the optioned

[1] Unless otherwise specified, all capitalized words and phrases shall have the meanings ascribed to them in the Motion.

property. Under the terms of the Option, Unison could sustain a loss if Plaintiff continued to hold the property, and the market fell. Such fluctuations mean the Option truly functions as an option and not like a loan. The Opposition fails to offer any response to the federal district court opinions holding precisely this. And, because its value is dependent on fluctuations in the market, it is also indisputable that the Option lacks the key "hallmark" of a loan under Colorado law—fixed interest. That is dispositive of Claims 3, 4, and 5, all of which are statutory claims that apply expressly and solely to loans.

Plaintiff's Opposition concedes that Claim 6 (notarization) lacks legal support, and thus "withdraws" her request "to void the contracts on that basis." Dkt. 22 ("Opp.") at 30 n.13. She nonetheless asks the Court for a declaration proclaiming that the notarization of certain documents was purportedly inadequate as a factual matter. But because the Plaintiff concedes Colorado law does not require notarization in order for an agreement to be valid and enforceable, her request amounts to an improper advisory opinion that would have no effect on the dispute. Claim 6 should be dismissed in full.

Finally, Claims 7 and 8 should be dismissed because Plaintiff fails to plead a basis for rejection of the Option under the Bankruptcy Code, and likewise alleges no basis to support disallowance of Unison's proof of claim.

## ARGUMENT

### I. Plaintiff's Attempt to Prevent the Court from Considering the Contractual Terms and Factual Allegations of the Complaint Must Be Rejected.

Unison's Motion explained that the Complaint is nothing more than a series of characterizations and conclusory statements that are a classic failure to meet the plausibility standard of *Iqbal* and *Twombly*. Most significantly, the Complaint assiduously avoids addressing the language of the contract, disclosures, and other documents referenced in the Complaint. But it

is black letter law that such documents central to a plaintiff's claim are to be considered within the context of a motion to dismiss unless authenticity is in dispute. *See, e.g.*, *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (cited by Plaintiff at Opp. at 7). Indeed, "if the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document" to a complaint. *GFF Corp. v. Assoc. Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir. 1997).

Plaintiff does not dispute that the materials submitted with Unison's Motion are central to her claims. *See generally* Opp. Nor could she. The crux of Plaintiff's argument is that the agreements she signed are "voluminous" and "confusing," and that the transaction allegedly "guarantee[d] a usuriously high rate of return" to Unison. *Id.* at 8. Plaintiff's characterization is refuted by the Offer Package submitted as Exhibit 1 (Dkt. 14-2) and HomeOwner Agreement submitted as Exhibit 2 (Dkt. 14-3), which she concedes were incorporated into the Complaint by reference and are thus properly considered by the Court. *See* Opp. at 7 n.1. These documents, all of which were signed by Plaintiff, clearly and unmistakably disclose the nature of the Option. *See, e.g.*, Ex. 1 at 1; Ex. 2-1 § 1.

As an alternative theory, Plaintiff alleges that she was persuaded to enter into the HomeOwner Agreement by "representations made by . . . Unison representatives." Compl. ¶¶ 61–66. Emails and recorded phone calls between Plaintiff and Unison representatives are thus also central to her claims and were submitted on the Motion as Exhibits 3 through 13. *See* Dkt. 14-3 through Dkt. 14-17. Those communications clearly show Plaintiff was not confused or deceived, including Plaintiff's own "work sheet" that she "made" containing "the <u>Option Math</u> calculation." Ex. 8 (Dkt. 14-12) at 4–5. Simply repeating the conclusory allegation in the Complaint that she was deceived is no response at all.

Plaintiff also "did not dispute the authenticity" of any of the Exhibits. *See GFF Corp.*, 1330 F.3d at 1385. Baldly asserting "that [the documents are] not authenticated," as Plaintiff does here, is not sufficient to prevent consideration of documents central to a claim; rather she must "expressly challenge [their] authenticity." *Frost v. ADT, LLC*, 947 F.3d 1261, 1267 n.4 (10th Cir. 2020) (district court properly considered contract in deciding unconscionability claim despite plaintiff arguing it was "not authenticated"). Plaintiff did not do so.[2]

The Tenth Circuit has made clear that a plaintiff should not be permitted to advance deficient claims by pleading allegations contradicted by the very communications on which the claims are premised. *See GFF Corp.*, 130 F.3d at 1384. That is what Ms. Stone attempts here. The submitted documents are dispositive of the claims and Plaintiff does not argue otherwise. Rather, she argues that the documents should be struck (though she makes no motion to that effect) and then fails to address them. This means the Opposition does not offer a substantive response to the Motion and the Motion should be granted.

## II. Plaintiff's Legal Theories as to Why She Need Not Plead Facts Sufficient to State a Claim for Unconscionability Must Be Disregarded.

Plaintiff's Opposition to Unison's request to dismiss the unconscionability claim is an exercise in seeking to avoid application of Rule 12(b)(6) to the Complaint and documents on which it relies. *See, e.g.*, Opp. at 7, 8. This includes the argument that unconscionability claims cannot be dismissed at the pleading stage as a matter of law. This argument is flawed and should be disregarded; as explained below, *Iqbal* and *Twombly* mandate that conclusory or implausible

[2] Nor could she do so in good faith. Exhibits 1 and 2 bear Ms. Stone's electronic and handwritten signatures; Exhibits 3-12 were sent to and from her email address, debdstone@gmail.com, with several emails referencing the same home address contained in her Complaint (*compare, e.g.*, Ex. 6 (Dkt. 14-10) at 1 *with* Compl. ¶ 59); and Exhibit 13 contains two recorded phone calls bearing Ms. Stone's voice.

allegations of unconscionability—like those Plaintiff asserts here—be dismissed under Rule 12(b)(6).[3]

### A. Unconscionability Claims are Properly Dismissed on the Pleadings.

Courts in the Tenth Circuit routinely dispose of unconscionability claims at the pleading stage for failure to state a claim.[4] Nonetheless, Plaintiff erroneously contends that a state statute, C.R.S. § 5-5-109, prohibits dismissal on a Rule 12(b)(6) motion. Not only does the case that she cites, *Carlson v. General Motors Corp.*, say no such thing,[5] it "has been criticized by several district courts in light of the Supreme Court's subsequent decisions in *Iqbal* and *Twombly*." *Chiarelli v. Nissan N. Am., Inc.*, No. 14-4327, 2015 WL 5686507, at *7 n.5 (E.D.N.Y. Sept. 25, 2015); *see, e.g.*, *Alban v. BMW of N. Am.*, No. 09-5398, 2011 WL 900114, at *9 n.8 (D.N.J. Mar.

---

[3] As to Plaintiff's bald and unexplained assertion that Unison failed to move to dismiss a part of the "first count," Unison explicitly moved to dismiss that claim. Plaintiff's first cause of action is for "Unconscionability." Compl. at p.16. Plaintiff alleges that the basis of Count 1 is that the Option is allegedly "substantively and procedurally unconscionable" (*id.* ¶ 119), and purports to seeks "all available relief" under C.R.S. § 5-5-109 (*id.* ¶ 121) and "the common law contract defense of unconscionability" (*id.* ¶ 122). Unison moved to dismiss the First Claim (for "Unconscionability") because the Complaint fails to plausibly allege either substantive or procedural unconscionability, as required to state a claim both under common law and under the statute. Mot. at 10–15; *see, e.g.*, *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 850 (10th Cir. 1986) (explaining courts "look to the existing common law of Colorado" where a statute "does not define the term 'unconscionable'"); *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, No. 06-1212, 2007 WL 4268962, at *5 (D. Colo. Nov. 30, 2007) (applying common law unconscionability framework in evaluating Uniform Consumer Credit Code ("UCCC") claim). Plaintiff's implicit demand that Unison repeat the same argument twice is both pedantic and unwarranted. Plaintiff's waiver cases—involving parties who failed to challenge independent and factually distinct *counts*—are inapposite. *See Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1266 (10th Cir. 2004) (appellant did not challenge district court's dismissal of her sexual harassment claim in the opening appellate brief, instead "focusing exclusively on her retaliation claim"); *McCausland v. Charter T'ship of Canton*, No. 18-12409, 2020 WL 13499606, at *1 & n.1 (E.D. Mich. May 11, 2020) (Rule 12(b)(6) motion only challenged Plaintiff's Count V, and never "discuss[ed] Plaintiff's alleged failure to state a claim with respect to Count I or Count II"). Unison's Motion seeks to dismiss Count 1 in its entirety.

[4] *See, e.g.*, *Frost*, 947 F.3d at 1269 (affirming dismissal); *Robinson v. Am. Airlines, Inc.*, 743 F. App'x 233, 238 (10th Cir. 2018) (same); *Martin v. United Airlines, Inc.*, 727 F. App'x 459, 463–64 (10th Cir. 2018) (same); *Scott v. Honeywell Int'l Inc.*, No. 14-157, 2015 WL 1517527, at *9 (D. Colo. Mar. 30, 2015); *Res. Inv. Corp. v. Enron Corp.*, 669 F. Supp. 1038, 1042 (D. Colo. 1987).

[5] In fact, the Fourth Circuit expressly acknowledged in *Carlson* that unconscionability could be decided on the pleadings. 883 F.2d 287, 292 (4th Cir. 1989).

15, 2011) ("[I]n light of *Bell Atlantic* and *Iqbal*, the Fourth Circuit's logic is no longer persuasive, as conclusory allegations [of unconscionability] are insufficient to survive a motion to dismiss.").

*Carlson* is no longer good law, and Plaintiff's argument does not pass muster in a post-*Iqbal* world. For example, in *Ray v. Samsung*, the plaintiff cited *Carlson* and the same statutory language as Plaintiff (*see* Opp. at 8)—"When it is claimed . . . that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence"—to argue that she was "entitled to present evidence before the Court can rule" on her unconscionability claim. *Ray v. Samsung Elecs. Am., Inc.*, No. 15-8540, 2016 WL 3406127, at *6 (S.D.N.Y. June 17, 2016) (quoting N.C. Gen. Stat. § 25-2-302(2)). The court rejected that contention, holding that "[f]ederal pleading standards require [plaintiff] to plead a plausible claim of both substantive and procedural unconscionability . . . to survive a motion under Rule 12(b)(6)." *Id.*[6] Put simply, "[i]n contrast to *Carlson*'s 'discovery first' approach, *Iqbal* teaches that before allowing a plaintiff to 'present relevant evidence' . . . [s]he must first allege enough factual matter showing that h[er] claim is plausible." *Roe v. Ford Motor Co.*, No. 18-12528, 2021 WL 2529825, at *15 (E.D. Mich. June 21, 2021). As explained in Unison's Motion and below, Plaintiff's Complaint fails to do so, requiring dismissal.

**B. Plaintiff Does Not Plausibly Allege Procedural Unconscionability.**

Colorado law requires a showing of *both* procedural and substantive unconscionability. *See, e.g.*, *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1194 (D. Colo. 2013). Count 1 fails at the outset because Plaintiff has not and cannot allege procedural unconscionability.

---

[6] *See also, e.g.*, *Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660, 669 (D. Minn. 2021) (inclusion of the same UCC language in Minnesota statute does not relieve a plaintiff from "alleg[ing] sufficient facts as to unconscionability" to survive a motion to dismiss). Plaintiff's proposal would impermissibly allow a state statute to abrogate the requirements of Rule 12(b)(6). *See, e.g.*, *Satkar Hosp. Inc. v. Cook Cnty. Bd. of Rev.*, No. 10-6682, 2011 WL 2182106, at *3 (N.D. Ill. June 2, 2011) (barring second motion to dismiss under Rule 12 even though state anti-SLAPP statute permitted multiple motions to dismiss) (collecting authority).

Contrary to the broad-brush and conclusory contentions in the Opposition, the Complaint does not plausibly allege that "fine print," coercion, or "unfair surprise" effectively hid the actual terms of the Option. *Id.* (discussing *Davis* factors). Indeed, Plaintiff's own cases—none of which involved circumstances similar to those pled here—confirm that Plaintiff comes nowhere close to pleading conduct so unfair that would it void an agreement the parties freely and voluntarily entered.

Of the five *Davis* factors that concern procedural unconscionability, only one—the use of a "standardized agreement"—is arguably present here. But Plaintiff's own cited cases confirm that, at most, the use of a "form agreement" weighs only "mildly" in favor of a finding of unconscionability, *Bonanno v. Quizno's Franchise Co., LLC*, No. 06-2358, 2009 WL 1068744, at *18-19 (D. Colo. Apr. 20, 2009)—if at all. *Mullan*, 797 F.2d at 851 ("[E]ven though a contract is a printed form and offered on a 'take-it-or-leave-it basis,' those facts alone do not cause it to be an adhesion contract.") (citing *Jones v. Dressel*, 623 P.2d 370, 374 (Colo. 1981) (en banc)). This is especially true where, as here, the parties did not have an "ongoing relationship," and Plaintiff was "free" to walk away and seek a transaction "elsewhere." *Bonanno*, 2009 WL 1068744, at *18; *see also Mullan*, 797 F.2d at 851 (explaining that, to be an adhesion contract, services must not be "readily obtained elsewhere," and finding no unconscionability because plaintiff could have purchased a similar product elsewhere); *Scott*, 2015 WL 1517527, at *9 (because plaintiff could have readily obtained a competing product, his "allegation that the parties were of 'grossly unequal' bargaining power lacks factual support and is therefore conclusory").

Plaintiffs' own cases further confirm that "[t]he second *Davis* factor, whether [Plaintiff] had a chance to read and become familiar with the document before signing it, favors" Unison. *Bonnano*, 2009 WL 1068744, at *19. Though not alleged in the Complaint, the Opposition baldly asserts that "Ms. Stone was not provided the opportunity to read or become familiar with the

documents before signing." Opp. at 11. Once again, the assertion is flatly contradicted by the email correspondence referenced in the Complaint, which first offered Plaintiff copies of the agreements on November 12, 2018 (Ex. 5 (Dkt. 14-9) at 2), an offer she apparently failed to accept, and then transmitted copies to her on December 19, 2018 (Ex. 11 (Dkt. 14-15)). Hard copies were presented for Ms. Stone's review on December 22, 2018, which she executed by hand. Ex. 2. Even assuming Ms. Stone chose not to review the documents until the date of signing (which is not alleged), that "does not change the fact that [Unison] gave [her] **the opportunity** to read the agreement"—both at the time of signature and on prior occasions. *Bonnano*, 2009 WL 1068744, at *19 (emphasis in original).[7] Finally, Ms. Stone never alleges that she asked for additional time to review the documents and/or to seek additional information or counsel. *See* Mot. at 11–12. Similarly, the insinuation that Unison refused to answer Plaintiff's questions is belied by the recorded phone calls in which she spoke with Unison representatives about the economics of the Option, following which Plaintiff confirmed her understanding of the Option mechanics in email. Exs. 8, 13.

As to the third factor, Plaintiffs' contentions are again divorced from both the allegations of the Complaint and the documents on which her claims rely. She asserts that "the terms of the transaction were confusing and embedded in fine print," but fails to identify any "fine print" in the documents or specify any contract terms she allegedly found "confusing." *See* Opp. at 11. Yet again, her vague allegations about "fine print" are immediately negated by the Offer and agreement documents themselves, which state the key terms of the Option on their respective first pages in

[7] The Opposition's new assertion that Plaintiff purportedly "believed . . . the deal was consummated" when she signed the Offer Package (Opp. at 11) is both not alleged in the Complaint and belied by her prior acknowledgment that the Offer was conditional on her execution of the HomeOwner Agreement documents (Ex. 1 at 4). But even if true, it changes nothing. Plaintiff was offered "a full copy of the legal agreements that comprise the Unison HomeOwner Agreement" at the same time she was provided the Offer Package, along with ten days to review them before conditionally accepting the Offer. Ex. 1 at 1. Ms. Stone obtained copies of the agreement documents the following day. Ex. 11. Her decision to sign the Offer Package the same day she received the HomeOwner Agreement documents does not mean she was not provided a fulsome opportunity for review. *Cf. Bonanno*, 2009 WL 1068744, at *19.

"normal print consistent with other clauses in the contract." *Rocky Mountain Chocolate Factory*, 2007 WL 4268962, at *7; *see* Ex. 1 at 1, Ex. 2-1 at 1. Far from trying to conceal the terms of the transaction, Unison urged Plaintiff in bolded and underlined text to "**Please Read Carefully**" and "**strongly urge[d]**" her to "**discuss[] the Unison HomeOwner Agreement with your own advisors (legal, financial, estate planning, tax) and family members**." *E.g.*, Ex. 1 at 5. Plaintiff acknowledged that she did so. *Id.* at 10. Plaintiff's argument in response—that her handwritten signature is meaningless—flies in the face of Colorado law, which holds that "[c]ontracts between competent parties, voluntarily and fairly made, should be enforceable according to the terms to which they freely commit themselves." *Ravenstar, LLC v. One Skill Hill Place, LLC*, 401 P.3d 552, 555 (Colo. 2017) (citation omitted); *see also Thurmon v. Skipton*, 403 P.2d 211, 214 (Colo. 1965) ("Courts will enforce a contract as made, regardless of whether it is an improvident one from the standpoint of one of the parties.").

Plaintiff's arguments as to the remaining procedural factors are equally conclusory and merely parrot the *Davis* factors (Opp. at 12), cite public statements that Ms. Stone does not allege she saw before entering into the Option (*id.*, citing Compl. ¶¶ 40–51), or reference other conclusory statements in the Complaint that are refuted by Ms. Stone's actual communications and agreements with Unison (*id.*, citing Compl. ¶¶ 63–66, 72). The Opposition fails to identify deficiencies in assent or allegations of unfair surprise or lack of notice. Quite simply, the nature of the transaction was clearly disclosed to Plaintiff in writing, with ample opportunity to review its terms, seek guidance, and ask questions—as evidenced by the numerous emails and hours of phone conversations Plaintiff engaged in with Unison, including Plaintiff describing the "Option Math" to Unison in her own words. *See* Exs. 3–13.

### C. Plaintiff Does Not Plausibly Allege Substantive Unconscionability.

Plaintiff also fails to plead substantive unconscionability, which is likewise a requirement to state a claim. Once again, the best the Opposition musters is vague and conclusory assertions that are directly refuted by the documents on which they rely. For example, Plaintiff's contentions that the nature of the transaction was not disclosed, or that it unfairly "guarantee[d] a usuriously high rate of return" to Unison (Opp. at 8) is contradicted by both the Offer and the HomeOwner Agreement Plaintiff signed. For example, the first page of the Offer explains:

> If you accept our Offer, you will grant Unison HomeOwner Agreement Corp. ("Unison") an Option to purchase a percentage interest in your home in the future. The percentage interest in your home will be 70.00% interest (the "Investor Percentage"). The price Unison will pay will total $140,000 (the "Unison Purchase Price"). Unison will pay you a portion of the Unison Purchase Price (the "Unison Investment Payment") upon closing of your Unison HomeOwner Agreement, less a transaction fee. Here is a calculation of the amount of the Unison Investment Payment to you:
>
> | | |
> |---|---|
> | Unison Investment Payment | $35,000.00 |
> | Less Unison Transaction Fee | $1,365.00 |
> | Equals Gross Proceeds | $33,635.00 |
>
> Unison will pay the balance of the Unison Purchase Price to you ("Unison Purchase Price Balance") when your Unison HomeOwner Agreement ends, which typically is when you sell your home.

Ex. 1 at 1. Plaintiff acknowledges that she understood the outcome of the Option would depend on the market for her home at the time of sale. Compl. ¶ 72. The other terms of the transaction (*e.g.*, "requiring her to [continue] to cover all costs of maintaining the home" and prohibiting her from obtaining additional financing on the home without approval from Unison, (Opp. at 9)) are both fully disclosed in the HomeOwner Agreement documents Plaintiff signed (Ex. 2-1 §§ 8.2, 8.3, 8.9) and common terms found in other homeowner transactions like loans.

Next, Plaintiff complains that agreements she signed "omitted important information and contained material misrepresentations"—without identifying specific language she claims was

missing or constitutes a purported misrepresentation. In fact, the only concrete complaint Plaintiff makes is that that the agreement allegedly "obscure[d] . . . the cost" of the transaction by "not us[ing] the actual numbers of this transaction" in illustrating the option mechanics. Opp. at 13–14. But because the outcome of the Option is dependent on the market for Plaintiff's home when she chooses to sell, at that time there was no way (and still isn't) to predict the "actual" outcome in advance. *See* Mot. at 2, 8. Once again, the Complaint acknowledges Plaintiff understood this was a feature of the Option, and one she regarded favorably. *See* Compl. ¶ 72 (alleging the Plaintiff "understood that the market could increase or decrease" which "provided her with some comfort about the transaction"). Ultimately, Plaintiff's theory boils down to an argument that, assuming she were to sell her home today, the Option "may benefit [Unison] more than [her]." *Bonnano*, 2009 WL 1068744, at *21; *see* Opp. at 14 (alleging she "would not have accepted" the Option if she had known how much her home would increase in value "a few years later"). But, as her own cited case makes clear, that would not "not [be] enough to render it substantively unconscionable." *Bonnano*, 2009 WL 1068744, at *21 (holding class action waiver was not unconscionable even though it "benefits Quizno's, potentially at the franchisees' expense"); *see also Rocky Mountain Chocolate Factory*, 2007 WL 4268962, at *6 (that an "agreement . . . turned out to be unfavorable . . . is not sufficient to show that the contract was unconscionable").

Plaintiff does not and cannot plausibly dispute that she entered into the Option freely and voluntarily, with knowledge of its terms and in recognition that the outcome of the Option would depend on the market (such that it could end up being more favorable to her or to Unison). The Option is enforceable and not unconscionable. *See Ravenstar*, 401 P.3d at 55.

## III. Plaintiff's Second Claim Should Be Dismissed Because She Does Not Allege an Unfair or Deceptive Practice that Significantly Impacts the Public.

### A. The Complaint Does Not Plausibly Allege an Omission with Particularity.

The Opposition claims that "Defendants do not address Ms. Stone's omission claim." Opp. at 16. To the extent the Motion did not address an "omission claim" under the CCPA, it is because the word "omission" does not appear a single time in the Complaint. The closest that Plaintiff's CCPA claim comes to asserting a factual omission is a bare reference to one of the statute's many subsections (Compl. ¶ 125(d)), buried in a list of other subsections that have no relevance here. *See, e.g.*, *id.* ¶ 125(a) ("disparaging the goods, services, or business of another").[8] As Unison's Motion explained, however, bare statutory citations are not entitled to credence. *See* Mot. at 15 n.14 (citing *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Opposition now asserts that Unison "failed to disclose information about the cost of the agreement, including accurate estimates of the total amount Ms. Stone would have to repay Unison and, accordingly, an accurate estimated interest rate." Opp. at 17. Setting aside the fatal fact that this new assertion is not in the Complaint, it makes no sense. As Ms. Stone was well aware (and as evidenced by the Complaint and the communications on which it relies), she granted Unison an Option with the understanding that the outcome of the Option would depend on the sale price when she chose to sell her home. *See* Compl. ¶ 72; Mot. at 2, 10. Thus, not only was there no "interest rate" to be "estimate[d]," it was impossible to provide an "accurate estimate[] of the total amount" each of the parties would receive upon the sale of her home. *See* Opp. at 17. That is underscored by Plaintiff's unremarkable contention that Unison must have "internal projections" and "forecasts" about what the future may hold. *Id.* But alleging a CCPA violation requires

---

[8] Plaintiff concedes that other referenced CCPA subsections only apply to loans or lending (*see, e.g.*, Compl. ¶ 125(e); Opp. at 16 n.8), and are thus inapplicable on their face, as Unison's Motion explained. *See* Mot. at 19 –24.

pleading that the defendant withheld "material information . . . *known* at the time of an advertisement or sale." C.R.S. § 6-1-105(1)(u) (emphasis added).

Finally, even if Plaintiff had asserted a plausible omission claim in the Complaint (she did not), she certainly has not complied with the "modified" Rule 9(b) standard she concedes would apply to such a claim: "a plaintiff must identify 'the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed." Opp. at 16 (quoting *O'Connor v. BMW of N. Am., LLC*, No. 18-3190, 2020 WL 2309617, at *12 (D. Colo. Jan. 7, 2020)). The Complaint alleges none of these things, starting with the "particular information that should have been disclosed." *Id.* The Opposition argues for the first time that Unison should have disclosed "accurate estimates of the total amount" Unison would receive at option exercise (*id.* at 16), but fails to explain how Unison could possibly do that when that figure depends entirely on the market for Plaintiff's home on the date she decides to sell. Unison could not possibly include "accurate estimates"—which Plaintiff equates to an exact prediction of future events—of the price a home will sell for on some unknown date years in the future. Plaintiff knew that when she chose to sell Unison the Option. *See* Compl. ¶ 72; Ex. 8 at 4.

**B. Plaintiff Fails to Plead Reliance on a Materially False or Misleading Statement.**

The Opposition does not dispute—and accordingly concedes—that stating a claim requires Plaintiff to plead reliance on a false or misleading statement. *See* Mot. at 15; *Petersen v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1114 (D. Colo. 2018) (dismissing claim for failure to plead plaintiff "saw or relied upon any deceptive information" before entering into transaction with defendant). Plaintiff also concedes that her claim is "subject to Rule 9(b)'s heightened pleading requirements," which obligate her to plead "the time, place and contents of the [allegedly] false

representation, the identity of the party making the false statements and the consequences thereof." Opp. at 18. She contends she did so by alleging that, "in or around December 2018, she had telephone conversations with Unison representatives and understood from those conversations that she was not obligated to pay Unison back until she should her house." *Id.* But this vague allegation does not identify a *single* statement that a Unison representative allegedly made. Quite simply, pleading what Plaintiff allegedly "understood" does not comply with a requirement to plead "the *contents* of the [allegedly] false *representation*," particularly when she spoke with representatives on multiple occasions for more than an hour (*see* Ex. 13). Count 2 fails for that reason alone. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000) (affirming dismissal because general allegation "that the Defendants 'fail[ed] to disclose the existence, location, ownership, condition, and true value of [KII] assets and property'" "specifies nothing about the content of the alleged misrepresentations").[9]

Even if the claim passed muster under Rule 9(b), it nonetheless fails to plead that Unison made a material misstatement to Ms. Stone. Though not pled in the Complaint, the Opposition argues that Plaintiff's alleged understanding (that Unison would not exercise the Option until she sold her home) was wrong because the agreement has a maximum 30-year term (as she admits was disclosed in the Offer Package and Option agreement). Opp. at 18–19. But a maximum 30-year term, expiring in 2048, cannot possibly be "material" to Plaintiff—as she concedes an actionable statement "must be" (*id.* at 18)—because she claims she wants to sell her home now (*id.* at 13). As her next attempt to manufacture a misrepresentation, Plaintiff asserts that the $200,000 "Original Agreed Value" at which her condominium was appraised in December 2018 and to which she

[9] The *Weingot* opinion is distinguishable, as the plaintiffs in that case pled a specific representation that was allegedly made to them by a Unison representative during a specific phone call, which they alleged was "entirely contradicted by the terms of the Agreement." *Weingot v. Unison Agmt. Corp.*, No. 21-4542, 2024 WL 1191106, at *4 (E.D.N.Y. Mar. 20, 2024).

agreed (Ex. 2-1 at 4–5) "did not represent [its] true value." Opp. at 19. But Plaintiff offers *zero* supporting factual allegations for her speculation, which is undermined by her own allegation that it represents a more than 40% increase in value over the price she paid for the condo two years earlier. *Compare* Compl. ¶ 59 (purchased in October 2016 for $141,500) *with id.* ¶ 69 ($200,000 Agreed Value in December 2018).[10] Devoid of any "factual enhancement," Plaintiff's speculative and conclusory assertion "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557.

**C. Plaintiff Fails to Plead Significant Public Impact.**

The Opposition concedes that Plaintiff has not identified anyone else who has been "impacted" by the alleged misrepresentations that she asserts, and instead argues that allegations of "widespread advertisements" containing false statements can be "sufficient to show public impact." Opp. at 21. But that is nothing like what Plaintiff alleges here. Indeed, Plaintiff does not allege that she saw *any* purportedly false or misleading advertisements before selling Unison the Option. *See* Mot. at 16–17.[11] Rather, the alleged representations that she challenges—an unidentified statement made during a phone call between herself and Unison and the "Original Agreed Value" at which her home was appraised—were made *only* to her and could not possibly have caused "significant public impact." *Cf. Frias v. Chris the Crazy Trader, Inc.*, 604 F. App'x 638, 643 (10th Cir. 2015) (affirming dismissal on the ground that impact on twelve consumers "was insufficient to show significant public impact").

[10] Plaintiff's allegations about the significant increase in value in the two years before she granted the Option also belies her suggestion that she had no reason to believe her condo might "increase in value" in the years following her sale of the Option to Unison. *See* Opp. at 19.

[11] Plaintiff alleges she received "a Unison advertisement for the Unison HomeOwner Program" that prompted her to contact Unison for more information, but does not claim the advertisement included any misrepresentations. Compl. ¶¶ 60–61.

Plaintiff cannot plead "significant public impact" because this is, at root, an individual dispute concerning "a private transaction involving [Plaintiff's] personal residence." *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1142 (D. Colo. 2013). Speculation that others may be confused "in the same manner" as Plaintiff allegedly was (Opp. at 22) "is nothing more than a conclusory statement that falls short of the pleading requirements enunciated in *Twombly* and *Iqbal*" and is belied by the individualized allegations underpinning Plaintiff's claim. *Id.*; *see also Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 528 (Colo. Ct. App. 2008) (dismissing CCPA claim because "the allegations are all based on conduct that is unique to the particular transaction between Morris and COPIC" and rejecting contention that "a claim for bad faith, by its very nature, involves a public impact"). Plaintiff's CCPA claim must be dismissed for this reason as well.

## IV. The Third, Fourth, and Fifth Claims Fail Because the Option Is an Option and Not a Loan.

Plaintiff's Opposition fails in its attempts to recharacterize the Option as a loan and have lending statutes applied. The Opposition ignores Unison's clear explanation of the plain terms of the Option and how it operates (Mot. at 9) and the fact that the Option is dependent on the housing market, and therefore performs like an option and not like a loan (*id.* at 9–11). Plaintiff also does not engage with Colorado's well established case law and statutory authority on options for the sale of real property. Instead, the Opposition contorts the facts and holding of *Oasis*, while still falling short of adequately alleging that the Option creates an obligation to repay or involves the "hallmark" characteristic of a loan, *i.e.*, fixed interest. *Oasis Legal Fin. Grp., LLC v. Coffman*, 361 P.3d 400 (Colo. 2015). The Opposition does not meaningfully dispute that both the Colorado legislature and Supreme Court have recognized options for the sale of real property similar to the one at issue here. *See* Mot. at 21–22; *Shull v. Sexton*, 390 P.2d 313, 316 (1964); C.R.S. § 38-38-100.3(5.3); C.R.S. § 38-35-111; C.R.S. § 38-35-127(2)(b). And Plaintiff declines to engage with

authorities demonstrating that Colorado courts enforce options for the sale of land or any interest in land so long as certain requirements are met, as they are here. *See Shull*, 390 P.2d at 316; *Schreck v. T & C Sanderson Farms*, 37 P.3d 510, 513 (Colo. App. 2001); *Boyer v. Karakehian*, 915 P.2d 1295, 1298 (Colo. 1996) (en banc).

As the Opposition points out, *Shull* does not address loans or mortgages, but instead analyzes an optionee's attempts to get out from under an option for the future sale of real property by claiming, *inter alia*, that the terms were insufficient because they did not adequately describe the land in question and the manner or form of payment. 390 P.2d at 315. There, the Colorado Supreme Court held that where an option's terms are clear, as they are here, the contract will be upheld. *Id.* at 317. Plaintiff's attempt to distinguish the option at issue in *Shull* because of its two-month term and set price is without merit—Colorado law does not require options to conform to any specific deal terms. *See Schreck v. T & C Sanderson Farms*, 37 P.3d 510, 513 (Colo. App. 2001) (for an option to be valid, all that is required is that it is in writing and contains the names of the parties, the terms and conditions, a description of the property, and the consideration). Moreover, where plaintiffs have attempted to recharacterize options for the sale of real property as mortgages or loans, Colorado courts have imposed a high standard of proof, a standard that Plaintiff has come nowhere close to satisfying. *See Sw. Motels v. Rollnick Stores*, 402 P.2d 632, 632 (Colo. 1965); *Arch A. Edwards Post No. 252 v. Gould*, 356 P.2d 908, 909–910 (Colo. 1960). Plaintiff's assertion that *Oasis* modifies this standard is unsupported by the holding in that case (*see* Opp. at 27 n. 10), which did not in fact address options for the sale of real property.

The only additional case Plaintiff cites involving real property is inapposite. *Reitze v. Humphreys*, a case decided before the First World War, involved a series of loans with a specified interest amount, provided to a property owner starting on the last day of the foreclosure redemption

period. 125 P. 518, 519 (Colo. 1912). The parties in *Rietze* formed numerous, at times contradicting, oral and written contracts (including a lease and option) in formalizing these transactions, causing the court to consider parole evidence in determining that the intent of the arrangement was a mortgage to secure the loan. *Id.* at 520–21. In deciding this Motion, in contrast, the Court need only look at the four corners of the sole contract between the parties to enforce the Option as such. *See* Compl. ¶¶ 67, 69, 103; Mot. at 22–23.

Finally—and perhaps most importantly—the Opposition does not address *Foster v. EquityKey Real Est. Invs.*, No. 17-00067, 2017 WL 1862527, at *1–2 (N.D. Cal. May 9, 2017), or persuasively distinguish other federal district court opinions holding that Unison products similar to the Option here are not mortgages or loans. *See* Mot. at 22–24; *Olson v. Unison Agreement Corp.*, No. 22-1859, 2023 WL 5609251, at *2 (W.D. Wash. Aug. 30, 2023); *Goldwater Bank, N.A.* v. *Elizarov*, No. 21-616, 2022 WL 18231680, (C.D. Cal. Dec. 12, 2022).[12] The *Foster* court squarely held that the type of option Plaintiff granted to Unison does not create debt since there was "no guarantee that the payment received by [plaintiff] need ever be returned," because the optionee, EquityKey, "[was] not obliged to exercise its option." 2017 WL 1862527 at *4. Furthermore, Plaintiff's attempt to apply the facts and holding in *Oasis*, a case involving litigation financing where the repayment obligation (*i.e.*, debt) amounted to a specific amount which increased in a linear, interest-like, manner, doesn't carry the day. Here, Plaintiff does not have an obligation to repay Unison because the Option is "a unilateral contract" that "imposes no obligations upon" Unison unless and "until [it] elects to accept the offer contained in the option."

[12] The Opposition uses a string cite to two other unpublished decisions analyzing Unison's Option, one of which granted the company's motion to dismiss without reaching the issue of how the option should be analyzed under California law (*Odyssey Reinsurance Co. v. Unison Agreement Corp.*, No. 21-011, 2021 WL 2588859, at *1 (S.D. Cal. June 24, 2021)), while the other did not meaningfully engage with the applicability of Florida's usury laws to the Option at the pleading stage. *Singhal v. Unison Agreement Corp.*, No. 22-60656, 2023 WL 2734230, at *5 (S.D. Fla. Mar. 31, 2023).

*Shull*, 390 P.2d at 316; 2 Colo. Prac., Methods of Practice § 61:5; *see* Ex. 2-1 § 1. Despite parroting irrelevant portions of the Complaint, the Opposition does not acknowledge how the Option differs from the financing analyzed in *Oasis*. Here, the Option lacks the "hallmark" characteristic of a consumer loan as posited by *Oasis* since the amount at issue does not "grow[] in predictable intervals fixed by the [lenders]" but instead "fluctuate[s] with market conditions." *Id.* at 409–410. Accordingly, Plaintiff's handwaving cannot alter the fundamental differences between the Option and the litigation financing in *Oasis*, and as such, Plaintiff fails to show that the Option is a loan and not in fact an option.

Because the Option is not a loan, Claims 3, 4, and 5 must be dismissed.

## V. Having Withdrawn Her Request to Void the Agreement, Plaintiff's Request for Declaratory Relief Regarding Notarization is an Improper Advisory Opinion.

In the Opposition, Plaintiff concedes that any alleged defects in notarization or recording "do not void the contract" and accordingly "withdraws the request in Count VI to void the contracts on this basis." Opp. at 30 n.13. Rather than dismissing the claim, however, Plaintiff asks the Court to issue "a declaration that the notarization was not proper." *Id.* Plaintiff's request constitutes an improper advisory opinion.

"Federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *Jordan v. Sosa*, 654 F.3d 1012, 1026 (10th Cir. 2011) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (cleaned up)). "[W]hat makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109–10 (10th Cir. 2010) (quoting *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994)). In other

words, a declaratory judgment must "have some effect in the real world." *Id.* at 1110 (quoting *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005)).[13]

A determination as to whether portions of the HomeOwner Agreement were properly notarized is a nonjusticiable advisory opinion that will have no "effect in the real world," *see id.*, because even assuming, *arguendo*, that they were not, Plaintiff concedes that the lack of proper notarization would have no legal impact on the agreements at issue (and thus no impact on the parties' respective rights and responsibilities). *See* Opp. at 30 n.13. That is because, as Plaintiff admits in the Opposition, "there is no requirement under Colorado law" for a deed conveying property to be notarized at all. *Id.* at 30. Because the only remaining relief that Plaintiff requests is an improper advisory opinion, the Court should dismiss the Claim 6 in its entirety.

## VI. Plaintiff's Seventh Claim Fails Because the Option is Not Executory and Unison's Interest in the Option is Secured.

In the Motion, Unison explained the Court should dismiss the seventh claim, which seeks rejection of the Option under Bankruptcy Code Section 365, because (1) the Option does not require material performance from Unison which would make it an executory contract subject to rejection; and (2) Unison's interest is fully secured, so rejection would provide no benefit to the estate. Plaintiff fails to rebut either point.

### A. The Option Is Not Executory.

Plaintiff claims the Option is executory because of the following three "obligations": (1) Unison is "obligated to release the deed of trust once all of [Plaintiff's] obligations are met"; (2) Unison "must either exercise its option or decline to do so"; and (3) Unison "must decide if

[13] These justiciability requirements are not abrogated by the Uniform Declaratory Judgments Law, C.R.S. § 13-51-101 *et seq. See, e.g., Roe v. Aegis Wholesale Corp.*, No. 13-CV-3040, 2014 WL 4746721, at *8 (D. Colo. Sept. 24, 2014). And even if this Court found that Plaintiff met the threshold standard of justiciability (which she has not), the Court should still "refuse to render or enter [Plaintiff's requested] declaratory judgment" because it "would not terminate the uncertainty or controversy giving rise to the proceeding." *See* C.R.S. § 13-51-110.

Ms. Stone violated the deed of trust provisions and the appropriate remedy for an alleged violation." Opp. at 31. None of these supposed "obligations" render the agreement executory.

The first purported "obligation"—the requirement that Unison release the deed of trust upon Plaintiff's performance under the Option—is a formality, not an obligation for material performance. Courts have repeatedly held that similar administrative actions do not render a contract executory. *See, e.g.*, *In re Streets & Beard Farm P'ship*, 882 F.2d 233, 235 (7th Cir. 1989) (delivery of legal title upon payment "is a mere formality and does not represent the kind of significant legal obligation that would render the contract executory"); *In re Brick House Props., LLC*, 633 B.R. 410, 422 (Bankr. D. Utah 2021) (conveyance of legal title upon tender of purchase price not material); *see also In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 243 (3d Cir. 1995) (requirement to execute contract supplement was "a perfunctory act utilizing preapproved terms and conditions" rather than a material obligation); *In re Chateaugay Corp.*, 102 B.R. 335, 347 (Bankr. S.D.N.Y. 1989) (providing notice of certain events was "immaterial, *de minimis*, remote and contingent"). If any unfilled future obligations, however immaterial, were sufficient to render a contract executory, then "almost all agreements [would be] executory since it is the rare agreement that does not involve unperformed obligations on either side." *In re Baird*, 567 F.3d 1207, 1211 (10th Cir. 2009).

The other two provisions Plaintiff cites are not obligations at all. *First*, Plaintiff claims that Unison must "either exercise its option or decline to do so." Opp. at 31. But making such a decision is simply not an obligation. If Unison does nothing (*i.e.*, it does exercise the Option), no performance is required, and Unison is not "obligated" to do anything. *See In re Yang*, No. 23-75, 2023 WL 7104764 (Bankr. S.D. Ind. Oct. 23, 2023) (rejection improper where Unison's obligations under option "may or may not ever be due"). Plaintiff seeks to distinguish *Yang* on the facts,

claiming that if Unison declines to exercise the Option, Unison would then be required to release the deed of trust. Opp. at 32. But as noted above, releasing the deed of trust is a formality, and not an obligation. *Second*, Plaintiff claims that Unison "must decide if Ms. Stone violated the deed of trust provisions and the appropriate remedy for an alleged violation." *Id.* at 31. But pursuing a remedy against a breaching counterparty is not performance of a contractual obligation to the counterparty. And again, this is not an "obligation"—Unison is not *required* to pursue a remedy. *See In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 518 (Bankr. S.D.N.Y. 2024) (even if action "might be advisable, it is not material to the contract [if] it is not required by the contract or even discussed in the contract itself"). If determining that a counterparty has violated an agreement and seeking a remedy constituted a material unperformed obligation to them, every breached contract would be executory, and Section 365(a) would be turned on its head.

Because Plaintiff has failed to identify any non-contingent, unperformed, material obligations under the Option, the Option is not an executory contract, and Claim 7 should be dismissed.

**B. Unison's Interest is Secured.**

Unison's Motion explained that its Option interests are fully secured and rejection would therefore provide no benefit to the estate. Mot. at 28–29. Plaintiff does not dispute that Unison's interests are fully secured and skirts the argument. She simply contends that "Unison's claim is for zero dollars" and that rejection of the Option would benefit the estate because "no money is owed to [Unison] by Ms. Stone." Opp. at 33. But as set forth in the Motion and below, Plaintiff's claim is unliquidated—not for "$0"—and rejection would entitle Unison to a secured breach of contract claim in the full amount of its claim, which it could immediately assert. Mot. at 30–31. There is thus no scenario where rejection would benefit the estate. Because Plaintiff concedes that Unison's

interests are secured, and fails to identify any business justification for rejection, Claim 7 should be dismissed.

## VII. Plaintiff's Eighth Claim Fails Because the Proof of Claim is Unambiguous.

Unison's Motion explained why Plaintiff has failed to allege facts supporting disallowance of its claim: the proof of claim is unliquidated (rather than for a fixed dollar amount) and unambiguous. Mot. at 30–31.[14] In her Opposition, Plaintiff elides Unison's explanation, claiming that Unison "refus[es] to attach an amount to its claim" and that the proof of claim is "contradictory." Opp. at 34. Plaintiff's argument is baseless.

As a preliminary matter, Plaintiff provides no authority requiring a creditor to "attach an amount" to its claim—nor can she. Unliquidated claims are recognized under the plain text of the Bankruptcy Code, 11 U.S.C. 101(5)(A), and are consistent with Congress's intent "to incorporate the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 80 (1991).

Nor is the proof of claim "contradictory," unclear, or inconsistent. As Unison explained in the Motion, while the proof of claim includes a $0 notation for claim amount, it expressly refers to Attachment A, which explains in detail that the claim is unliquidated. Bankr. Dkt. 16-1 at 2. The plain text of the proof of claim and the attachments further explain that the amount owed by Plaintiff is "not fixed," and that the calculation of the amount due as of the petition date—$88,352.60—is included solely "*for purposes of illustration*." Proof of Claim 4 (emphasis added). And while the proof of claim identifies the amount of Unison's advance payment to Plaintiff—$35,000—it never suggests that this is the amount of its claim. *Id.* Plaintiff cannot create ambiguity by cherry-picking snippets from the detailed and otherwise clear proof of claim, much less show

[14] The Motion also explained why Plaintiff's other allegations in support of claim disallowance are unavailing—neither the timing of the assignment nor the lack of Unison's signature affect the validity of the proof of claim. Mot. at 30. Plaintiff's Opposition does not rebut Unison's arguments or otherwise address them.

that the claim lacks any "basis in fact or law" as required for claim disallowance. *See In re Alternate Fuels, Inc.*, 789 F.3d 1139, 1148 (10th Cir. 2015).

Moreover, as Unison explained in the Motion, the appropriate remedy for ambiguity in a proof of claim is amendment, not disallowance. *See* Mot. at 31–32 (citing authority). Plaintiff fails to address this argument, tacitly conceding that she has no rebuttal. To the extent Claim 8 is not dismissed, Unison should be granted leave to amend the Proof of Claim.

## CONCLUSION

For the foregoing reasons, as well as those set forth in its opening Motion, Unison respectfully requests that the Court dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.

Dated: December 23, 2024

Respectfully submitted,

MARKUS WILLIAMS YOUNG &
HUNSICKER LLC

By: */s/ Lacey S. Bryan*
James Markus (CO #25065)
Lacey S. Bryan (CO #51908)
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
jmarkus@markuswilliams.com
lbryan@markuswilliams.com

JENNER & BLOCK LLP

By: */s/ Jeremy M. Creelan*
Jeremy M. Creelan (NY #2831535)
1155 Avenue of the Americas
New York, New York 10036-2711
Telephone (212) 891-1600
jcreelan@jenner.com

*Counsel for Real Estate Equity Exchange, Inc., Unison Agreement Corp., Odin New Horizon Real Estate Fund LP, and Unison Investment Management, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 20, 2024 pursuant to L.B.R. 9013-1 and 9036-1 a copy of the **REPLY IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT** [Doc. 24] was electronically filed and served via e-mail on the following:

**Via CM/ECF**

Shennan Kavanagh
skavanagh@nclc.org

Alex Witteveld
awitteveld@colegalserv.org

The undersigned further certifies that on December 23, 2024 pursuant to L.B.R. 9013-1 and 9036-1 a copy of the foregoing **CORRECTED REPLY IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT** was electronically filed and served via e-mail on the following:

**Via CM/ECF**

Shennan Kavanagh
skavanagh@nclc.org

Alex Witteveld
awitteveld@colegalserv.org

Dated: December 23, 2024

*/s/ Jessica Anderson*

Markus Williams Young & Hunsicker LLC
1775 Sherman Street, Suite 1950
Denver, CO 80203
Telephone: 303-830-0800