**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re<br><br>DEBORAH DEE STONE<br><br>Debtor. | Case No. 24-12767 MER<br><br>Chapter 13 |
| DEBORAH DEE STONE,<br><br>Plaintiff,<br><br>v.<br><br>REAL ESTATE EQUITY EXCHANGE, INC; UNISON AGREEMENT CORP.; ODIN NEW HORIZON REAL ESTATE FUND LP; and UNISON INVESTMENT MANAGEMENT, LLC,<br><br>Defendants. | Adversary No. 24-01181 MER |

## AMENDED ANSWER TO ADVERSARY PROCEEDING COMPLAINT & OBJECTION TO PROOF OF CLAIM NO. 16

Defendants Unison Agreement Corp. ("UAC"), Real Estate Equity Exchange, Inc. ("REX"), Odin New Horizon Real Estate Fund LP ("Odin"), and Unison Investment Management, LLC ("UIM") (collectively, "Defendants"), by and through their attorneys, and with written consent of Plaintiff, through her attorneys of record, hereby amend their answer to the Adversary Proceeding Complaint and Objection to Proof of Claim No. 16 (the "Complaint") [ECF No. 1] filed by Deborah Dee Stone (the "Debtor") and state their defenses to the complaint as follows:

### DEFENDANTS' STATEMENT PURSUANT TO FED. R. BANKR. P. 7012

Pursuant to Fed. R. Bankr. P. 7012(b), Defendants consent to the entry of final orders or judgment by the Bankruptcy Court.

## PARTIES, JURISDICTION AND VENUE

1. Debtor Deborah Dee Stone ("Ms. Stone") files this joint Adversary Proceeding and Objection to Proof of Claim Number 16 to seek an adjudication of the status of the lien and debt created by virtue of various contracts (collectively, the "HomeOwner Agreement") asserted by Defendants/Creditors Odin New Horizon Real Estate Fund LP and related entities named as defendants herein.

**ANSWER:** Defendants admit Debtor filed the Complaint. Defendants deny the HomeOwner Agreement created debt and deny that Debtor is entitled to any relief against Defendants. Except where expressly admitted, Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations, if any, in Paragraph 1 of the Complaint and therefore on that basis, deny them.

2. The HomeOwner Agreement at issue purports to be an option contract to purchase an interest in Ms. Stone's home, but it is not a true option. Instead, it is an advance of funds to be repaid at a later date, with substantial interest, secured by a home, otherwise known as a mortgage loan.

**ANSWER:** Defendants admit that on or about December 19, 2018, Debtor entered into a series of agreements with UAC, including the Unison HomeOwner Option Agreement ("Option"), Unison HomeOwner Covenant Agreement ("Covenant"), Unison HomeOwner Deed of Trust and Security Agreement ("Deed of Trust"), and Memorandum of Unison Agreement ("Memorandum") (collectively, the "Agreements"). Defendants further admit that the Option is an option contract. Defendants deny the remaining allegations in Paragraph 2 of the Complaint.

3. Defendants/Creditors misrepresented the nature of the HomeOwner Agreement, marketing and selling it as an "equity sharing" arrangement, when in fact it ultimately-unbeknownst to Ms. Stone--entitled Defendants to a majority of the value of Ms. Stone's home.

**ANSWER:** Defendants deny the allegations in Paragraph 3 of the Complaint.

4. The transaction was lopsided and deceptive and part of a larger scheme by Defendants to transfer wealth from homeowners to themselves and investors.

**ANSWER:** Defendants deny the allegations in Paragraph 4 of the Complaint.

5. The HomeOwner Agreement implicates the administration of Ms. Stone's bankruptcy estate as it ties up her most valuable asset, her real estate, which she seeks to liquidate as part of her Chapter 13 Plan.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 5 and on that basis deny the allegations in Paragraph 5 of the Complaint.

6. In this Adversary Proceeding Ms. Stone requests that the Court find that the HomeOwner Agreement is invalid and unenforceable because it: (1) is unconscionable and/or induced by unconscionable conduct in violation of common law and statute; (2) is unfair and deceptive in violation of the Colorado Consumer Protection Act; (3) violates Colorado mortgage lending statutes; (4) is usurious and otherwise violates the Uniform Consumer Credit Code and/or reverse mortgage lending requirements; and/or (5) was fraudulently notarized.

**ANSWER:** Paragraph 6 consists of a summary of relief Debtor seeks, to which no response is required. To the extent this paragraph refers to the Complaint, that document is the best evidence of what is contained therein. To the extent the allegations of this paragraph contradict the document, they are expressly denied. As to the remaining allegations, Defendants lack sufficient

knowledge or information to form a belief as to the truth of the allegations and therefore on that basis, deny them and further deny that Debtor is entitled to the requested relief. Defendants further respond that the Court has dismissed Debtor's claim alleging fraudulent notarization.

7. If the Court finds that the HomeOwner Agreement does not constitute a loan, Ms. Stone requests a declaration that it is void and unenforceable because it is unconscionable. In the alternative, Ms. Stone requests a declaration that it is an executory contract, which she rejects.

**ANSWER:** Paragraph 7 consists of a summary of relief Debtor seeks, to which no response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and therefore on that basis, deny them and further deny that Debtor is entitled to the requested relief.

8. This Court has jurisdiction over this action under 28 U.S.C. § 1334. The matters complained about are core proceedings under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1409(a).

**ANSWER:** To the extent this paragraph states conclusions of law, no response is required. To the extent a response is required, Defendants admit that the Court has jurisdiction over the matter and that venue is proper.

9. This action is a core proceeding as determination of the issues presented below directly affects the distribution of claims and the status of whether a debt is owed to Defendants, and if a debt is owed, whether this debt is secured or unsecured.

**ANSWER:** To the extent this paragraph states conclusions of law, no response is required. To the extent a further response is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint and therefore

on that basis, deny them. Defendants further state that Debtor has failed to comply with Fed. R. Bankr. P. 7008.

10. Plaintiff Deborah Dee Stone is a 67 year-old woman, living alone in her home at 202 Lucca Drive, Evans, Weld County, Colorado. Ms. Stone is an unsophisticated consumer with a high school diploma who worked as an administrative assistant during her career before leaving the workforce due to disability. She does not have knowledge of complex secured financial transactions.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint and therefore on that basis, deny them.

11. Defendant Unison Agreement Corp. ("UAC"):

a. is a Delaware corporation with a principal place of business at 650 California St., Fl. 1800, San Francisco, CA 94108.

b. is not registered as a supervised lender in Colorado as that term is classified in the Colorado Uniform Consumer Credit Code, C.R.S. § 5-1-301(46).

c. originated the transaction at issue.

**ANSWER:** Defendants admit UAC is a Delaware corporation with its principal address at 4 Embarcadero Center, Suite 710, San Francisco, CA 94111. Defendants admit UAC is not currently registered as a supervised lender in Colorado. Defendants admit UAC entered into the Agreements with Debtor. Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 11 of the Complaint.

12. Defendant Unison Investment Management, LLC ("UIM"):

a. is a Delaware corporation and SEC-registered investment advisor with a principal place of business, 650 California Street, Fl. 1800, San Francisco, CA 94108.

b. uses the name Odin Investment Management.

c. manages and markets to investors assets originating from UAC, including by creating securitized trusts to reduce investment risk, such as the fund at issue in this case, Odin New Horizon Real Estate Fund LP.

d. has engaged with Ms. Stone regarding the transaction at issue, after it was securitized.

e. is not registered with the Colorado Secretary of State or otherwise licensed in Colorado.

**ANSWER:** Defendants admit UIM is a Delaware limited liability corporation and SEC-registered investment adviser with its principal address at 4 Embarcadero Center, Suite 710, San Francisco, CA 94111. Defendants admit UIM manages assets that UAC enters into, including the Agreement. Defendants admit UIM is not currently registered with the Colorado Secretary of State or licensed in Colorado. Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 12 of the Complaint.

**AMENDED ANSWER:** Defendants admit UIM is a Delaware limited liability corporation and SEC registered investment adviser with its principal address at 4 Embarcadero Center, Suite 710, San Francisco, CA 94111. Defendants admit UIM manages assets that UAC enters into, including the Agreement. Defendants admit UIM is not currently registered with the Colorado Secretary of State or licensed in Colorado. Defendants further admit that some of the

assets originated by UAC, including the Agreements, are included in securitized trusts. Defendants further admit that Odin New Horizon Real Estate Fund LP is a Unison managed fund that transferred specified assets, including the Agreements, to the specified securitized trusts. Defendants deny that such securitized trusts were created solely to reduce investment risk, as implied in Plaintiff's allegations to paragraph 12(c). Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 12 of the Complaint.

13. Defendant Odin New Horizon Real Estate Fund LP ("Odin Fund"):

a. is a Delaware limited partnership "real estate opportunistic fund" with the same principal place of business, 650 California St., Fl. 1800, San Francisco, CA 94108.

b. is managed by Odin New Horizon Partner LLC, which is controlled by UIM.

c. was assigned Ms. Stone's loan during the process of the loan's origination.

d. is not registered with the Colorado Secretary of State or otherwise licensed in Colorado.

**ANSWER:** Defendants admit Odin is a Delaware limited partnership with its principal address at 4 Embarcadero Center, Suite 710, San Francisco, CA 94111. Defendants admit Odin is managed by Odin New Horizon Partner LLC. Defendants admit the Agreements were assigned to Odin pursuant to an Assignment of Unison HomeOwner Agreement recorded in Weld County Clerk and Recorder. Defendants admit Odin is not currently registered with the Colorado Secretary of State or licensed in Colorado. Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 13 of the Complaint.

14. Defendant Real Estate Equity Exchange, Inc.:

a. is a Delaware corporation with a principal place of business at 650 California St., Fl. 1800, San Francisco, CA 94108.

b. is the corporate parent of UAC and substantially controls UIM and shares the same principal place of business as these companies.

**ANSWER:** Defendants admit REX is a Delaware corporation with its principal address at 4 Embarcadero Center, Suite 710, San Francisco, CA 94111. Defendants admit REX is the corporate parent of UAC. Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 14 of the Complaint.

15. Together, Defendants are joined in common enterprise and are referred to collectively herein as "Unison."

**ANSWER:** Paragraph 15 of the Complaint consists of a legal conclusion and the definition of a defined term used by Debtor, to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 15 of the Complaint.

16. Unison operates in thirty states and Washington D.C., including over 200 metro areas. According to Unison, these real estate markets represent more than 82% of the value of all U.S. real estate. Unison currently holds $8.1 billion in real estate "assets."

**ANSWER:** Defendants admit that UAC has entered into agreements with property owners across thirty states and Washington D.C., including more than 200 metro areas. Defendants admit that the webpage at www.unisonim.com currently includes the phrases "Operational in markets representing more than 82% of U.S. real estate by value" and "$8.1B The underlying value of our real estate assets." Except where expressly admitted, Defendants deny the remaining allegations, if any, in Paragraph 16 of the Complaint.

## FACTUAL ALLEGATIONS

### A. Unison's Business Model

***Unison's Business Model is Investor Driven***

17. Unison was founded in 2004 by Thomas Sponholtz ("Sponholtz") to provide long term capital assets to investors using residential real estate equity. Sponholtz is currently the Chief Executive Officer of UIM and UAC.

**ANSWER:** Defendants admit that REX was founded in 2004 by Thomas Sponholtz, currently CEO of UIM and UAC. Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 17 of the Complaint.

18. Unison is an "institutional investment management firm,"[1] with sophisticated "model, systems, and processes [it] build[s] to make investments,"[2] including "a 10-year forecast on every house in America."[3]

**ANSWER:** Paragraph 18 of the Complaint purports to quote a podcast and a website, which are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the sources cited in Paragraph 18, which speak for themselves. To the extent the allegations of this paragraph contradict such documents and evidence, they are expressly denied. As to the remaining allegations, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and therefore on that basis, deny them.

19. Prior to starting Unison, Sponholtz worked at Bear Stearns and then at Barclays Global Investors (now named BlackRock). At Barclays, he got the "big idea" for Unison's business

---

[1] Podcast Transcription Session No. 103 – Thomas Sponholtz & Jim Riccitelli, https://www.fintechnexus.com/wp-content/uploads2022/09/Podcast-10-Unison-Founders.pdf (last visited June 13, 2024).

[2] Unison IM, https://www.unisonim.com/ (last visited June 7, 2024).

[3] Podcast Transcription Session No. 103 – Thomas Sponholtz & Jim Riccitelli, https://www.fintechnexus.com/wp-content/uploads2022/09/Podcast-10-Unison-Founders.pdf (last visited June 13, 2024).

model, when he was "looking around for large asset classes [he] could add to [Barclays] client's portfolio."[4]

**<u>ANSWER</u>:** Defendants admit Thomas Sponholtz previously worked at Barclays Global Investors. Paragraph 19 of the Complaint purports to quote a podcast, which is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the podcast cited in footnote 3, which speaks for itself. To the extent the allegations of this paragraph contradict such documents and evidence, they are expressly denied. As to the remaining allegations, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and therefore on that basis, deny them.

20. Sponholtz identified owner-occupied homes as a significant investment opportunity for institutional investors. He noted that these investors had very little "exposure to the asset class" of residential real estate, despite it being the "largest asset class both globally and in the US," making up about 40% of the consumer price index and 16% of the gross domestic product.[5]

**<u>ANSWER</u>:** Paragraph 20 of the Complaint purports to summarize and quote a podcast, which is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the podcast cited in Paragraph 20, which speaks for itself. To the extent the allegations of this paragraph contradict such documents and evidence, they are expressly denied. As to the remaining allegations, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and therefore on that basis, deny them.

21. Sponholtz understood that the typical way for investors to profit off of residential real estate is to purchase homes and rent or resell them. However, this method is inefficient for

---

[4] *Id.*
[5] *Id.*

investors because it requires "tremendous administrative cost in maintaining and being a property manager of[] homes."[6] Sponholtz built the Unison model to provide investors the benefits of increased equity realized from property ownership, without the costs or burdens of actually purchasing or owning the homes themselves.

**ANSWER:** Paragraph 21 of the Complaint purports to summarize and quote a podcast, which is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the podcast cited in Paragraph 21, which speaks for itself. To the extent the allegations of this paragraph contradict such documents and evidence, they are expressly denied. As to the remaining allegations, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and therefore on that basis, deny them.

22. Unison's business model requires homeowners to bear all the costs and burdens of home purchase and ownership, including property taxes, insurance, maintenance, and management, while the investors treat the home as a passive investment ("long term patient capital"), from which they can expect to realize a tremendous gain.

**ANSWER:** Defendants deny the allegations in Paragraph 22 of the Complaint.

23. Unison uses a "very sophisticated data infrastructure and pricing structure" to "turn [] a house into a security" in order to "build [] nationwide portfolios for the benefit of the institutional investor."[7]

**ANSWER:** Paragraph 23 of the Complaint purports to quote a podcast, which is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the podcast cited in Paragraph 23, which speaks for itself. To the extent the allegations of this paragraph

---

[6] *Id.*
[7] *Id.*

contradict such documents and evidence, they are expressly denied. Defendants deny the remaining allegations, if any, in Paragraph 23 of the Complaint.

24. In its marketing to investors, Unison explains that its products have "unlimited upside and limited downside" as well as "low volatility and high risk-adjusted net returns compared to other major asset classes,"[8] including traditional home secured loans.

**ANSWER:** Paragraph 24 of the Complaint purports to quote a website, which is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the website cited in Paragraph 24, which speaks for itself. To the extent the allegations of this paragraph contradict such documents and evidence, they are expressly denied. Defendants deny the remaining allegations in Paragraph 24 of the Complaint.

***Unison Structures the Deal to Guarantee a High Rate of Return to Investors at HomeOwners' Expense.***

25. Home equity is the single largest asset for many lower- and middle-income families. It is essential for wealth building and for maintaining financial security.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 25 and on that basis deny the allegations in Paragraph 25 of the Complaint.

26. To access this "asset class," Unison developed a consumer-facing contractual arrangement it calls the "HomeOwner Agreement."

**ANSWER:** Defendants admit that UAC offers and enters into option contracts entitled the "HomeOwner Agreement." To the extent Paragraph 26 refers to the Agreements or the "HomeOwner Agreement," they are written documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speaks for itself. To the extent the allegations of this paragraph contradict such documents and evidence, they

[8] Unison IM, https://www.unisonim.com/about-us (last visited June 7, 2024).

are expressly denied. Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 26 of the Complaint.

27. Under the Unison HomeOwner Agreement, Unison provides a cash payment to homeowners in exchange for a purported "option to purchase" a substantial percentage (in this case, 70%) of the home at the inception of a qualifying event, such as expiration of the agreement's thirty-year term, the homeowner's death, or the sale of the home.

**<u>ANSWER</u>:** Defendants admit the under the Agreements, UAC provides an initial cash payment in exchange for an option to purchase a percentage interest in the homeowner's property upon certain exercise events, including sale of the property, the expiration of the agreement's term, or the homeowner's death. To the extent Paragraph 27 refers to the Agreements, they are written documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speaks for itself. To the extent the allegations of this paragraph contradict such documents and evidence, they are expressly denied. Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 27 of the Complaint.

28. Unison has structured its business model to hedge against any losses and shift the cost and risk of transactions onto homeowners, including through a requirement to pay back the original payment at a substantial increased cost-that is, interest-through the sale of the home, as well as bear any associated additional costs. The Unison HomeOwner model ensures a high rate of return to Unison and its investors for several reasons.

**<u>ANSWER</u>:** Defendants deny the allegations in Paragraph 28 of the Complaint.

29. Homeowners are much more likely to sell their homes when their homes have accrued equity, rather than at a loss. In other words, the vast majority of home sales will occur when Defendants realize a meaningful gain.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 29 and on that basis deny the allegations in Paragraph 29 of the Complaint.

30. Unison's contracts have a 30-year term, and the typical duration is ten years. According to Unison's prior President and co-CEO, this is a "longer term holding period," over which "real estate tends to perform fairly consistently."[9]

**ANSWER:** Defendants admit that some of UAC's contracts include a 30-year contractual term. To the extent Paragraph 30 of the Complaint purports to summarize a website, the website is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the website, which speaks for itself. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 30 of the Complaint.

31. A home will likely appreciate over a thirty-year period because, as Unison reports, "home equity tends to increase with the years of homeownership."[10]

**ANSWER:** To the extent Paragraph 31 of the Complaint purports to summarize a website or report, the documents are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speaks for itself. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. Defendants deny the remaining allegations in Paragraph 31 of the Complaint.

---

[9] *Id.*

[10] 2022 Unison Home Equity Report, https://www.unison.com/blog/home-equity-report-2022/ (last visited June 13, 2024)

32. Unison protects itself and investors from any market volatility in short-term sales by refusing to "share in any of the losses when a homeowner does not stay in their home" for several years after entering the transaction.[11]

**ANSWER:** To the extent Paragraph 32 of the Complaint purports to summarize a website, it is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. Defendants deny the remaining allegations in Paragraph 32 of the Complaint.

33. HomeOwners are responsible for paying all "closing costs" associated with the transaction, including appraisal and settlement costs (such as title, state taxes, and recording fees). On its website, Unison estimates these closing costs range from $1,800 to $4,050, depending on the location of the home. Unison's estimates are likely to be significantly understated in certain markets and depending on home value.

**ANSWER:** Defendants admit that homeowners are responsible for paying closing costs associated with the transaction. To the extent Paragraph 33 of the Complaint purports to summarize a website, it is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. Defendants deny the remaining allegations in Paragraph 33 of the Complaint.

34. Unison further guarantees that it gains at the expense of homeowners by discounting the original appraised value of the home to reach a falsely lower "Original Agreed

[11] FAQ – Home Equity Sharing Agreements, https://www.unison.com/faq/ (last visited June 13, 2024). Unison currently has a five year prepayment penalty for early sale of the home and will never share in the losses if a homeowner attempts a buy out of the agreement without selling her home. Ms. Stone's agreement has a three year penalty.

Value," so that when it later calculates its percentage share of the increased value of the home, Unison's share is more profitable.[12]

**<u>ANSWER</u>:** To the extent Paragraph 34 of the Complaint purports to summarize a website, it is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. Defendants deny the remaining allegations in Paragraph 34 of the Complaint. Defendants deny the allegations in Paragraph 34 of the Complaint.

35. Unison also requires that Homeowners maintain the property and pay for all fees, property taxes, and insurance for the property to ensure against risk.

**<u>ANSWER</u>:** To the extent Paragraph 35 of the Complaint purports to summarize the Agreements, they are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speaks for itself. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. Defendants deny the remaining allegations in Paragraph 35 of the Complaint.

36. Unison places a lien on the home to protect its interest, and then pools the "asset" into a securitized trust, which it sells to institutional investors such as pension funds.

**<u>ANSWER</u>:** Defendants admit as part of the Agreements, Debtor and UAC enter into the Deed of Trust, which secures Debtor's obligations under the Agreements. Defendants further admit that the Deed of Trust is subsequently recorded against the subject real property in the applicable county recorder's office. To the extent Paragraph 36 of the Complaint refers to the Deed of Trust or the Agreements, they are documents and are the best evidence of what is contained

[12] Unison currently assesses a 5% Risk Adjustment. *Id.*

therein. Defendants deny Debtor's characterization of the documents, which speaks for itself. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. Defendants deny the remaining allegations in Paragraph 36 of the Complaint.

**AMENDED ANSWER:** Defendants admit as part of the Agreements, Debtor and UAC enter into the Deed of Trust, which secures Debtor's obligations under the Agreements. Defendants further admit that the Deed of Trust is subsequently recorded against the subject real property in the applicable county recorder's office. To the extent Paragraph 36 of the Complaint refers to the Deed of Trust or the Agreements, they are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speaks for itself. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. Defendants also admit that some of the assets originated by UAC are included in securitized trusts and sold to third-parties. Defendants deny the remaining allegations in paragraph 36.

37. If a homeowner defaults on their obligations under the HomeOwner Agreement, Unison can seek a variety of financial remedies from the homeowner to ensure that it does not incur a loss, including through advances that accrue interest at a usurious rate, liquidated damages, and acceleration of the contract and foreclosure.

**ANSWER:** To the extent Paragraph 37 of the Complaint refers to the Agreements, they are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speaks for itself. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. To the extent Paragraph 37 of the Complaint consists of legal conclusions, no response is required. Defendants deny the remaining allegations in Paragraph 37 of the Complaint.

38. As the result of these and other provisions that protect investors at the expense of homeowners, Unison's portfolio has "achiev[ed] a 20.7% annualized net return since 2012,"[13] more than two-fold the stock market's average annualized net return.

**ANSWER:** To the extent Paragraph 38 of the Complaint purports to summarize a website, it is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. Defendants deny the remaining allegations in Paragraph 38 of the Complaint.

39. In recent years, Unison has securitized nearly a billion dollars in Unison HomeOwner Agreements.

**ANSWER:** Defendants deny the allegations in Paragraph 39 of the Complaint.

**AMENDED ANSWER:** Defendants admit that from December 2021 through December 2024, assets originated by UAC totaling approximately $1,025,000,000 were securitized, some of which included Unison HomeOwner Agreements.

***Unison Misrepresents Its Financial Product to HomeOwners.***

40. Unison advertises the Unison HomeOwner Agreement as an "equity sharing agreement." Unison tells homeowners that using its product is a "smarter way to access the equity you already own," and will lead to "no extra debt, no interest, no monthly payments."[14]

**ANSWER:** To the extent Paragraph 40 of the Complaint purports to summarize a website, it is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent the allegations of this

---

[13] Unison IM, https://unisonim.com/ (last visited June 7, 2024).
[14] *Id.*

paragraph contradict such document, they are expressly denied. Defendants deny the remaining allegations in Paragraph 40 of the Complaint.

41. Unison purports to invite homeowners to "make a partial sale of [the] equity they own in their home" in exchange for a "lump sum of cash."[15]

**ANSWER:** Paragraph 41 of the Complaint purports to quote a podcast and website, which is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the podcast and website, which speak for itself. To the extent the allegations of this paragraph contradict the podcast and website, they are expressly denied. Defendants deny the remaining allegations, if any, in Paragraph 41 of the Complaint.

42. But the Unison HomeOwner Agreement does not operate as Unison advertises. Unison takes a majority interest in the entire home, not just the home's equity, which comprises the value of the home that exceeds any home-secured debt. The agreement is therefore a homeownership sharing agreement (although the original Homeowner carries all of the costs of homeownership), not an "equity sharing agreement."

**ANSWER:** Defendants deny the allegations in Paragraph 42 of the Complaint.

43. This difference is material, because if Unison were sharing only in the available equity in homes, as it advertises, the HomeOwner Agreements would be substantially more likely to result in a loss or lower profits to Unison and its investors.

**ANSWER:** Defendants deny the allegations in Paragraph 43 of the Complaint.

44. For example, in Ms. Stone's case, Unison's Proof of Claim sets forth that it would be paid $88,352.60 if the home were sold now, based on the actual terms of the agreement, which award Unison 70% of the value of Ms. Stone's entire home. (Claim No. 12.) If, however, the

---

[15] Podcast Transcription Session No. 103 – Thomas Sponholtz & Jim Riccitelli, https://www.fintechnexus.com/wp-content/uploads2022/09/Podcast-10-Unison-Founders.pdf (last visited June 13, 2024).

calculations set forth by Unison on page 4 of its Proof of Claim were made based on Ms. Stone's home equity, after deducting for Ms. Stone's first mortgage, Unison would owe Ms. Stone $1,512.88.[16] (See Claim #12 at 4; Claim #7.)

**ANSWER:** Paragraph 44 of the Complaint purports to characterize a proof of claim filed in the bankruptcy proceeding, which is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. Defendants deny the remaining allegations in Paragraph 44 of the Complaint.

45. Unison misrepresents that it will only take a percentage of home equity rather than a large percentage of the home's total value in order to deceive homeowners about the true risks and costs of the transaction.

**ANSWER:** Defendants deny the allegations in Paragraph 45 of the Complaint.

46. Unison markets itself as being in "a partnership"[17] with homeowners, telling them that, "this investment has been made available to everyday people like you and me" and that "we share in the upside and the down."[18]

**ANSWER:** Paragraph 46 of the Complaint purports to characterize a website and other documents, which are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent

[16] This calculation assumes that Unison exercises its option and does not account for Ms. Stone's Home Equity Line of Credit described in Claim #4. If Claim #4 were taken into account, Unison would owe Ms. Stone even more funds, using the home equity figure. If Unison did not exercise its option, it would lose the original investment payment. In contrast, using the Unison contract, Unison recoups its original payment and makes substantial profit.

[17] *Id.*

[18] Unison Equity Sharing – No Monthly Payments, No Added Debt, https://www.unison.com/ (last visited June 7, 2024).

the allegations of this paragraph contradict such documents, they are expressly denied. Defendants deny the remaining allegations in Paragraph 46 of the Complaint.

47. However, an essential element of partnership is the sharing of the business losses or expenses.[19] Unison, however, has structured this transaction so the homeowner bears all the expenses, and Unison is highly unlikely to share any losses.

**ANSWER:** Paragraph 47 of the Complaint purports to characterize legal authority, which is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the authority, which speaks for itself. To the extent the allegations of this paragraph contradict such authority, they are expressly denied. To the extent Paragraph 47 consists of a legal conclusion, no response is required. Defendants deny the remaining allegations in Paragraph 47 of the Complaint.

48. Partners also owe each other a fiduciary duty.[20] However, as a SEC-registered investment advisor, UIM is legally required to act in the best interest of its clients—its investors—not in partnership with homeowners.

**ANSWER:** Paragraph 48 of the Complaint consists of legal conclusions, to which no response is required. To the extent a response is required, Paragraph 47 of the Complaint purports to characterize legal authority, which is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the authority, which speaks for itself. To the extent the allegations of this paragraph contradict such authority, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 48 of the Complaint.

---

[19] 68 C.J.S. Partnership § 131.

[20] 59A Am. Jur. 2d Partnership § 270 ("One of the paramount duties of partners among themselves, if not the primary duty, is their fiduciary duty, universally recognized as including a duty to exercise good faith and maintain the highest integrity in dealing with other partners."); 68 C.J.S. Partnership § 569 ("General partners owe their limited partners the duty of utmost good faith or honesty and loyalty or obedience, as well as candor, due care, and fair dealing.").

49. In fact, in the fine print of the actual contracts, Unison admits that its marketing is false by stating that it is not, in fact, the homeowner's partner.

**ANSWER:** Paragraph 49 of the Complaint purports to summarize "actual contracts," which is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. Defendants deny the allegations in Paragraph 49 of the Complaint.

50. In written materials provided to homeowners, Unison gives them the impression there is an equal chance of their home value increasing and decreasing over the term of the loan, such that Unison shares in the risk of loss or gain.

**ANSWER:** Paragraph 50 of the Complaint purports to summarize "written materials," which is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. Defendants deny the allegations in Paragraph 50 of the Complaint.

51. However, Unison promises investors that it has ensured, including through its modeling and home value forecasts, and manipulation of appraisal values, that the homes that it engages with are nearly guaranteed to increase in value over the course of the contract, such that the result of the contract is that Unison will gain money and the homeowner will lose money.

**ANSWER:** Defendants deny the allegations in Paragraph 51 of the Complaint.

***The Unison HomeOwner Agreement Operates Like a Mortgage Loan, Not an Option Contract.***

52. Despite Unison's claim that the Unison HomeOwner Agreement is an "option to purchase contract," the product operates exactly like a home-secured loan—only with worse terms for borrowers and none of the protections provided by lending laws.

**ANSWER:** Paragraph 52 of the Complaint purports to summarize the "Unison HomeOwner Agreement," which is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 52 of the Complaint.

53. Unison has structured the HomeOwner Agreement to nearly guarantee that it will get repaid. Indeed, Unison represents to homeowners that it "typically" will repay itself through the sale of the home.

**ANSWER:** Paragraph 53 of the Complaint purports to summarize the "Unison HomeOwner Agreement," which is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 53 of the Complaint.

54. Even when a homeowner "chooses to terminate [the] relationship with Unison," the homeowner must pay back at least the initial lump sum of money and Unison's "Investor Percentage," just like they would have to if Unison exercised its option.

**ANSWER:** Defendants deny the allegations in Paragraph 54 of the Complaint.

55. After the loan is originated and the lien is placed on the property, Unison immediately bundles it with other loans and places it into an asset-based security, exactly in the same manner that lenders securitize home-secured loans to reduce risk. Investors analyze these loan pools using the same analytics as they use for mortgage backed securities.

**ANSWER:** Defendants deny the allegations in Paragraph 55 of the Complaint.

56. Sponholtz himself has described the Unison HomeOwner Agreement as "similar to any home financing transaction."[21]

**ANSWER:** Paragraph 56 of the Complaint purports to summarize a website, which is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speaks for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 56 of the Complaint.

57. In short, the Unison product is not a true option, but instead is an advance of funds to be repaid at a later date, with substantial interest, secured by a home-otherwise known as a mortgage loan.

**ANSWER:** Defendants deny the allegations in Paragraph 57 of the Complaint.

58. As a result of Unison's mischaracterization of its product as an option rather than a loan, Unison seeks to circumvent regulatory requirements that protect consumers from predatory lending, including by:

a. Charging much higher effective rates of interest than are legally permitted for home secured loans

---

[21] "Equity Access – Marin Magazine – May 2007 – Marin County, California". www.marinmagazine.com. 10 April 2007, https://marinmagazine.com/community/local-business/equity-access/.

b. Failing to provide disclosures that are required for home secured loans so homeowners can understand the long-term risks, costs, and benefits of a transaction; and

c. Failing to give homeowners a cooling-off period, during which they can read and understand the transaction, and cancel it if necessary.

**ANSWER:** Defendants deny the allegations contained in Paragraph 58.

**B. Ms. Stone's Transaction**

59. On October 13, 2016, Ms. Stone purchased her home at 202 Lucca Dr., Evans, CO, for $141,500.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 59 and therefore on that basis, deny them.

***Unison Solicits Ms. Stone, Hiding the Cost of the Transaction.***

60. Around December of 2018, Ms. Stone responded to a Unison advertisement for the Unison HomeOwner program.

**ANSWER:** Defendants admit that Debtor contacted Unison in or around October 2018. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 60 and therefore on that basis, deny them.

61. Ms. Stone, who was living on a fixed disability income, called Unison and inquired about the advertisement.

**ANSWER:** Defendants admit that Debtor contacted Unison in or around October 2018. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 61 and therefore on that basis, deny them.

62. At the time, Ms. Stone's plan was to remain in her home until she died and leave it to her children upon her death. She anticipated that her children would sell the home at that time, and the equity realized from the sale would be part of their inheritance.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 62 and therefore on that basis, deny them.

63. Ms. Stone understood from talking to Unison that she could take out a loan from them, using her home as collateral.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 63 and therefore on that basis, deny them.

64. The Unison representatives did not reveal the true cost of the transaction.

**ANSWER:** Defendants deny the allegations in Paragraph 64 of the Complaint.

65. Ms. Stone continues to understand the transaction to be a home-secured loan.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 65 and therefore on that basis, deny them.

66. Based on the representations made by the Unison representatives that she could take out the loan and not pay it back until the house was sold, Ms. Stone decided to move forward with the transaction.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 66 and therefore on that basis, deny them.

***Unison Emails Confusing and Misleading Documents to Stone for Signature.***

67. On or about December 19, 2018, a Unison representative emailed a nineteen-page series of documents to Ms. Stone.

**ANSWER:** Defendants admit that on or around December 19, 2018, Unison sent Debtor an email which included an offer (the "Offer") to enter into the Agreements. To the extent

Paragraph 67 of the Complaint purports to summarize an email or related documents, these documents are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 67 of the Complaint.

68. The first page of the document states that it is an "Offer to enter into a Unison HomeOwner Agreement."

**ANSWER:** To the extent Paragraph 68 of the Complaint purports to summarize an email or related documents, these documents are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants admit the Offer contains the text reproduced in Paragraph 68 of the Complaint, among other language.

69. The document states:

> The **Original Agreed Value** of your Property has been established as $200,000.00.
>
> If you accept our Offer, you will grant Unison Agreement Corp. ("**Unison**") an Option to purchase a percentage Interest In your home In the future. The percentage interest In your home will be 70.00% interest (the "**Investor Percentage**"). Tile price Unison will pay will total $140,000.00 (the "**Unison Purchase Price**"). Unison will pay you a portion of tile Unison Purchase Price (tile "**Unison Investment Payment**") upon closing of your Unison HomeOwner Agreement, less a transaction fee. Here is a calculation of the amount of tile Unison Investment Payment to you:
>
> | | |
> |---|---|
> | Unison Investment Payment | $35,000.00 |
> | Less Unison Transaction Fee | $1,365.00 |
> | Equals Gross Proceeds | $33,635.00 |
>
> Unison will pay the balance or the Unison Purchase Price to you ("**Unison Purchase Price Balance**") when your Unison HomeOwner Agreement ends, which typically is when you sell your home.

**ANSWER:** To the extent Paragraph 69 of the Complaint purports to summarize an email or related documents, these documents are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants admit that the Offer contains the text reproduced in Paragraph 69 of the Complaint, among other language. Except where expressly admitted, Defendants deny the remaining allegations, if any, in Paragraph 69 of the Complaint.

70. According to information hidden in the fine print on Unison's website, upon information and belief, the "Original Agreed Value" was not the true value of Ms. Stone's home; rather, it was a discounted amount that would increase Unison's future profits.

**ANSWER:** Defendants deny the allegations in Paragraph 70 of the Complaint.

71. The documents contained in this packet include various calculations and legalese and are confusing and hard to understand.

**ANSWER:** To the extent Paragraph 71 of the Complaint purports to summarize the Offer and other documents, these documents are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants admit that the Offer contains calculations but deny the remaining allegations in Paragraph 71 of the Complaint.

72. The documents are misleading, including that they give the impression that there is an equal chance of Ms. Stone's home value increasing and decreasing over the term of the loan, in contrast to Unison's own internal projections. Unison indicated that it would share in any profit or

loss with Ms. Stone; Ms. Stone understood that the market could increase or decrease. This provided her with some comfort about the transaction.

**ANSWER:** To the extent Paragraph 72 of the Complaint purports to summarize the Offer and other documents, these documents are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 72 and therefore on that basis, deny them.

73. Ms. Stone is not privy to Unison's internal business projections.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 73 and therefore on that basis, deny them.

74. The purported cost estimates also misleadingly fail to include fees and costs incurred by the homeowner in the transaction.

**ANSWER:** To the extent Paragraph 74 of the Complaint purports to summarize the Offer and other documents, these documents are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 74 and therefore on that basis, deny them.

75. Upon information and belief, based on public statements made by Unison, its principals, and UIM, these projected home values do not reflect Unison's internal projections of home value or risk or the projections that it shares with its investors.

**ANSWER:** Defendants deny the allegations in Paragraph 75 of the Complaint.

76. Unison did not explain the nature of these documents to her.

**<u>ANSWER</u>:** Defendants deny the allegations in Paragraph 76 of the Complaint.

77. The documents repeatedly confirm that this was a loan by including statements making clear that Ms. Stone would be required to pay Unison back.

**<u>ANSWER</u>:** To the extent Paragraph 77 of the Complaint purports to summarize unspecified "documents," these documents are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 77 of the Complaint.

78. For example, one document states:

> The term of your Unison HomeOwner Agreement ("**Term**") is thirty (30) years. If you have not sold your Property or otherwise terminated the Unison HomeOwner Agreement by the end of the thirty (30) year Term, you will need to sell the Property or otherwise settle the Unison HomeOwner Agreement by paying Unison an amount equal to the value of its investment interest in the Property at that lime. The financial terms discussed in this paragraph are found in **Section 10** of the Unison HomeOwner Option Agreement.

**<u>ANSWER</u>:** Paragraph 78 of the Complaint purports to summarize an unspecified "document," which is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 78 and therefore on that basis, deny them.

79. Ms. Stone did not understand that she would have to sell after thirty years, regardless of whether she was still alive at the time. She had believed that she would only have to pay off when she sold or died, at her choice.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 79 and therefore on that basis, deny them.

80. The documents repeatedly refer to other documents and incorporate them by reference, but do not include those additional documents for review.

**ANSWER:** Paragraph 80 of the Complaint refers to and summarizes unspecified "documents" and "other documents," which are documents and the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speak for itself. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 80 of the Complaint.

81. Ms. Stone did not request a payment on her first mortgage as part of the transaction; however, hidden in the documents was a requirement that a payment of $2,192 be made on her first mortgage from the Unison Investment Payment.

**ANSWER:** Defendants deny the allegations in Paragraph 81 of the Complaint.

82. Understanding that she would receive a loan in the amount of $33,635, Ms. Stone electronically signed these documents on December 19, 2018.

**ANSWER:** Defendants admit that on December 19, 2018, Debtor signed an Acknowledgement of Acceptance, affirming that she had read and understood the Offer and related documents and "accept[ed] the Offer in accordance with its terms." Except where expressly admitted, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 82 and therefore on that basis, deny them.

***Assignment to Odin Fund***

83. On December 19, 2018, the date Ms. Stone e-signed the Offer documents, UAC assigned all rights and interests under four separate contracts-all purportedly dated the same date-to Odin New Horizon Real Estate Fund LP.

**ANSWER:** Defendants admit on December 19, 2018, Debtor signed an Acknowledgement of Acceptance, affirming that she had read and understood the Offer and related documents and "accept[ed] the Offer in accordance with its terms." Defendants further admit that UAC assigned its rights in the Agreements to Odin pursuant to an Assignment of Unison HomeOwner Agreement (the "Assignment"), which was recorded in the Weld County Clerk and Recorder. Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 83 of the Complaint.

84. Ms. Stone had not seen these documents nor entered into these agreements as of the time of the assignment. The nineteen-page packet of documents she had reviewed contained none of these contracts.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 84 and therefore on that basis, deny them.

85. According to the Offer letter, as of the date of assignment, several unfulfilled conditions remained outstanding before the transaction could be completed.

**ANSWER:** Paragraph 85 of the Complaint purports to summarize the Offer, and it is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. Paragraph 85 of the Complaint consists of a legal conclusion to which no response is required. To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 85 of the Complaint.

***Unison Instructs Ms. Stone to Sign Additional Documents.***

86. Unison advised Ms. Stone that someone would come to her home on December 22, 2018, to close the transaction.

**ANSWER:** To the extent Paragraph 86 of the Complaint purports to summarize an email, it is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants admit a representative of Unison stated to Debtor: "[O]nce we get [the signed Offer] back we actually order a mobile notary for you to actually perform the physical closing...Like I said they're mobile so typically most people will schedule it for their home." Except where expressly admitted, Defendants deny the remaining allegations in Paragraph 86.

87. On December 22, 2018, a man came to Ms. Stone's home with a stack of papers for her to sign for Unison.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 87 and therefore on that basis, deny them.

88. The man placed the stack of documents, comprising nearly 100 pages, in front of Ms. Stone and told her where to sign them.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 88 and therefore on that basis, deny them.

89. Ms. Stone asked questions about the documents, but the man told her that he could not answer any of her questions and was just there to get her signature on the documents.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 89 and therefore on that basis, deny them.

90. Ms. Stone did not understand the contents of the various documents presented to her for signature on December 22, 2018.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 90 and therefore on that basis, deny them.

91. Ms. Stone was not provided a signed or countersigned copy of any of the December 22, 2018, documents.

**ANSWER:** Defendants deny the allegations in Paragraph 91 of the Complaint.

92. Ms. Stone signed various documents, including a Deed of Trust and Memorandum of Unison Agreement.

**ANSWER:** Paragraph 92 of the Complaint purports to summarize "various documents," which are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. To the extent a further response is required, Defendants admit that on December 22, 2018, Debtor signed the Agreements, including the Deed of Trust and Memorandum. Except where expressly admitted, Defendants deny the remaining allegations, if any, in Paragraph 92 of the Complaint.

93. Two of the documents-a Deed of Trust and Memorandum of Unison Agreement-are purportedly notarized by Shirley Dodge.

**ANSWER:** Paragraph 93 of the Complaint purports to summarize "documents" including the Deed of Trust and Memorandum, which are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. To the extent a further response is required, the allegations in Paragraph 93 relate solely

to Debtor's fraudulent notarization claim, which the Court dismissed [ECF No. 33], and thus, no further response is required. To the extent a response is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 93 and therefore on that basis, deny them.

94. However, Ms. Stone never met with Shirley Dodge.

**ANSWER:** The allegations in Paragraph 94 relate solely to Debtor's fraudulent notarization claim, which the Court dismissed [ECF No. 33], and thus, no further response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 94 and on that basis deny the allegations of Paragraph 94 of the Complaint

95. Further, Ms. Stone was never asked to provide any identifying documents to a notary or to the man who entered her home.

**ANSWER:** The allegations in Paragraph 95 relate solely to Debtor's fraudulent notarization claim, which the Court dismissed [ECF No. 33], and thus, no further response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 95 and on that basis deny the allegations in Paragraph 95 of the Complaint.

***Unison Deceptively Records Lien on Home***

96. On January 3, 2019, Unison recorded the Memorandum of Unison Agreement and Unison HomeOwner Deed of Trust with the Weld County Clerk and Recorder.

**ANSWER:** Defendants admit the allegations in Paragraph 96 of the Complaint.

97. The Deed of Trust indicates that the consideration is $35,000 and provides no other information about the amount of the lien placed on the property.

**ANSWER:** Paragraph 97 of the Complaint purports to summarize the Deed of Trust, which is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 97 of the Complaint.

***Hidden Impact of the Transaction***

98. Unison did not provide required lending disclosures to Ms. Stone.

**ANSWER:** Paragraph 98 of the Complaint also consists of legal conclusions to which no response is required. To the extent a response is required, Paragraph 98 of the Complaint purports to summarize written disclosures which are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 98 of the Complaint.

99. Instead, Unison provided "disclosures" that did not comply with lending laws and were designed to be confusing and misleading.

**ANSWER:** Paragraph 99 of the Complaint purports to summarize "disclosures," which are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 99 of the Complaint.

100. As a result, Unison obscured the finance charges and cost of the credit.

**ANSWER:** Paragraph 100 of the Complaint also consists of legal conclusions to which no response is required. To the extent Paragraph 100 of the Complaint purports to summarize "disclosures," these are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 100 of the Complaint.

101. At no time did a Unison representative explain the nature of the transaction or the approximately 100 pages of complicated legal documents that it presented Ms. Stone to sign.

**ANSWER:** Defendants deny the allegations in Paragraph 101 of the Complaint.

102. Ms. Stone did not, and could not, understand the nature of the agreement. Ms. Stone has a high school degree and worked as an administrative assistant during her career and does not have knowledge of complex secured financial transactions. Indeed, the documents would be extremely difficult for anyone to understand.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 102 and therefore on that basis, deny them.

103. Unbeknownst to Ms. Stone at the time, the agreement includes the following terms:

a. Unison agreed to provide $35,000 to Ms. Stone minus a transaction fee of $1,365 paid to Unison and $2,192 paid by Unison to Quicken Loans on behalf of Ms. Stone. After deduction of Unison's transaction fee and the payment to Quicken Loans, Ms. Stone was paid $31,443 by Unison.

b. Despite Unison's advertisement that it would only take a share of Ms. Stone's home equity, Ms. Stone granted a right to Unison to purchase a 70% interest in her entire home.

c. Unison states that its "purchase price" for this so-called "option" is $140,000. However, Ms. Stone was not paid this amount. Instead, the $35,000 (minus fees) was paid to Ms. Stone as a purported "advance" with the remaining $105,000 to be paid out of the sales price of Ms. Stone's home at the time Unison exercises its so-called "option."

d. Thus, Ms. Stone would never receive any benefit from the $105,000 that is purportedly part of Unison's purchase price, given that this amount would be part of her home equity realized at the time of sale whether or not she ever entered into an agreement with Unison.

e. Unison will almost certainly be paid back for the initial loan amount. Unison will have the opportunity to be paid back at the earlier of: the conclusion of the thirty-year term; the date of sale of the property; the death of the homeowner; or the homeowner's default. Unison can force a sale upon the homeowner's default, the homeowner's death, or at the end of the thirty-year term to ensure that it is paid back. Given the terms of the agreement, Unison will recoup at least some of the loan even if the home depreciates over 25% in value, a nearly unheard of scenario that did not even occur in Ms. Stone's community during the real estate market crash in 2008.

f. Despite Defendants' advertisement that no monthly payments or costs are associated with the transaction, Ms. Stone is responsible for all costs

associated with the property, including upkeep and maintenance of the property, timely payment of all taxes, maintenance of insurance, timely payment of her mortgages, payment of all other fees and costs during the term of the contract, and avoidance of any liens

g. This is to protect Unison's interest in the home. If Ms. Stone fails to comply with these obligations to Unison's satisfaction, Unison can force a sale of the home and recover all amounts that it would be due under the contract, plus any damages that it has purportedly suffered, as well as multiple other "remedies."

h. Ms. Stone would be penalized if she sold her home within three years of entering the agreement. If she did sell within three years, she would be required to pay Unison in full plus the initial transaction fee, and Unison would not share in any losses from decline in property value. This protected Unison and investors from short-term market volatility.

i. When the property is sold, Ms. Stone will be required to pay all real estate commissions, selling costs, and costs of appraisals.

j. Unison is responsible for no costs associated with maintaining and growing equity in the home but will recover the overwhelming majority of the proceeds of appreciation in home value over the course of the agreement.

**ANSWER:** Paragraph 103 of the Complaint purports to summarize the Agreements, which are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this

paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 103 of the Complaint.

104. By structuring the deal in this way, Unison effectively guarantees that it will be profitable to exercise its option to purchase, so it is therefore not a true option.

**ANSWER:** Defendants deny the allegations in Paragraph 104 of the Complaint.

***Ms. Stone Begins to Discover the Impact***

105. In late-2023, facing a change in her circumstances, Ms. Stone decided that she would sell her home to recover some of her home equity and move in with one of her daughters.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 105 and therefore on that basis, deny them.

106. In anticipation of putting her home on the market, Ms. Stone obtained the payoff amounts for her first mortgage and home equity line of credit.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 106 and therefore on that basis, deny them.

107. She was unable to obtain a payoff from Unison, so she contacted the company.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 107 and therefore on that basis, deny them.

108. At that time, Ms. Stone learned for the first time that she would gain no proceeds from the sale of the home due to the nature of her agreement with Unison.

**ANSWER:** Defendants deny the allegations in Paragraph 108 of the Complaint.

109. The Unison representative, a UIM employee, followed up with an email dated October 18, 2023, stating:

> It was great speaking to you. I've broken down the math below for your use!
> Example:

$270k - $200k = $70k
$70k * 70% = $49k
Total payoff = $49k + $35K = $84k

Formula:
Home Market Value - Original Agreed Value ($200k) = (Appreciated Difference)
(Appreciated Difference) * Investor Percentage (70%) = Unison's share in equity
Unison's share in equity + Original Investment Price = Payoff

**ANSWER:** Paragraph 109 of the Complaint purports to summarize an email, which is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants admit that a Unison representative emailed Debtor on October 18, 2023. Except where expressly admitted, Defendants deny the remaining allegations, if any, in Paragraph 109 of the Complaint.

110. This was the first time Ms. Stone began to understand the ultimate cost of the transaction. Ms. Stone, however, remains confused about these calculations.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 110 and therefore on that basis, deny them.

111. If Ms. Stone had understood the cost of the transaction at the time that she entered the transaction, she never would have agreed to it.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 111 and therefore on that basis, deny them.

112. Not accounting for the missing payment to Quicken, based on the advance payment of $33,635 that Mr. Stone received, a payoff of $84,000 would be an effective annual percentage rate (APR) of 20.7749% for the loan.

**ANSWER:** Defendants deny the allegations in Paragraph 112 of the Complaint.

113. Using these figures, after paying off Unison, Ms. Stone would have been left with insufficient funds to pay off her legitimate mortgage loans.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 113 and therefore on that basis, deny them.

114. Notably, Unison referred to the amount as a payoff and did not refer to an "option" in these communications.

**ANSWER:** Paragraph 114 of the Complaint purports to summarize a document, which is a document and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the document, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 114 of the Complaint.

115. Unison further assumes in its formula, consistent with its statements to investors, that the home's value will appreciate.

**ANSWER:** Defendants deny the allegations in Paragraph 115 of the Complaint.

116. While this interaction began to inform Ms. Stone of the impact of the transaction, she continues to learn more about the terms of the agreement to this day.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 116 and therefore on that basis, deny them.

117. As the result of the Unison contract, Ms. Stone is trapped in her home without the ability to sell to recoup any of her home equity after paying off the other home secured loans.

**ANSWER:** Defendants deny the allegations in Paragraph 117 of the Complaint.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
UNCONSCIONABILITY
C.R.S. § 5-5-109 and/or Common Law Contract Defense

118. Ms. Stone repeats and realleges the paragraphs above and hereby incorporates the same as if set forth in full.

**ANSWER:** Defendants repeat and reallege their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

119. As described above and set forth herein, the agreement is substantively and procedurally unconscionable, including but not limited to the following:

a. Ms. Stone is a high school graduate without a sophisticated understanding of complex financial transactions;

b. Defendants are large financial companies engaged in the business of soliciting homeowners and placing them in agreements like the one entered by Ms. Stone;

c. Ms. Stone and Defendants occupied and occupy significantly unequal bargaining positions;

d. Defendants drafted all documents, amounting to approximately 100 pages and presented them as contracts of adhesion;

e. Defendants provided no meaningful explanation of the documents to Ms. Stone and instead simply instructed her to sign;

f. Defendants assigned the documents prior to Ms. Stone even entering the agreement;

g. Defendants falsely affixed a notary block and signature to the documents even though Ms. Stone did not sign before a notary;

h. Defendants failed to provide accurate disclosures related to the transaction and cost of credit as required by law;

i. Defendants instead provided purported disclosures that were misleading, misstated the risks and costs of the transaction, and were confusing;

j. Upon information and belief, Defendants manipulated the purported "original value" to increase their profits;

k. Defendants required that Ms. Stone pay a prepayment penalty if she sold her home within three years of the contract, to further insulate them from loss at her cost;

l. Defendants required that Ms. Stone bear all costs in order to protect and increase their profit, including costs associated with the purchase of the property, the costs of maintenance of the property, payment of taxes and insurance, payment of all seller's costs, and payment of additional fees;

m. The actual cost of the transaction to Ms. Stone was extremely high;

n. The terms of the transaction are substantially one-sided in favor of Defendants, who drafted the documents and their terms, and guarantee a substantial rate of return to Defendants at very limited cost or risk, while placing an outsized burden of the costs and risks on Ms. Stone, as described above.

**ANSWER:** Paragraph 119 of the Complaint purports to summarize the Agreements, which are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. Paragraph 119 of the Complaint

also consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 119 of the Complaint.

120. The transaction described herein is, gave rise to, or led Ms. Stone to believe would give rise to a consumer credit transaction given that Ms. Stone believed she was entering into a loan.

**ANSWER:** Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 120 and therefore on that basis, deny them.

121. Because the transaction was unconscionable at the time it was made or induced by unconscionable conduct, Ms. Stone is thus entitled and respectfully requests all available relief including that the court refuse to enforce the agreement and award her reasonable attorney fees. C.R.S. § 5-5-109.

**ANSWER:** Paragraph 121 of the Complaint refers to the Agreements, which are documents and are the best evidence of what is contained therein. Defendants deny Debtor's characterization of the documents, which speak for itself. To the extent the allegations of this paragraph contradict such document, they are expressly denied. Paragraph 121 of the Complaint also consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 121 of the Complaint and deny that Debtor is entitled to the requested relief.

122. In addition, or in the alternative, Ms. Stone is entitled to and respectfully requests all appropriate relief pursuant to the common law contract defense of unconscionability.

**ANSWER:** Defendants deny the allegations in Paragraph 122 of the Complaint and deny that Debtor is entitled to the requested relief.

**SECOND CLAIM FOR RELIEF**
VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
C.R.S. §§ 6-1-101 *et seq.*

123. Ms. Stone repeats and realleges the paragraphs above and hereby incorporates the same as if set forth in full.

**ANSWER:** Defendants repeat and reallege their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

124. Defendants engaged in unfair and deceptive trade practices as described above, including but not limited to by:

a. including false and misleading "disclosures" in the materials that underestimated the costs of the transaction to Ms. Stone;

b. including false and misleading information that underestimated the profits that Defendants would gain from the transaction;

c. misrepresenting the true nature of the transaction as an "option" rather than a loan;

d. placing all costs of the transaction onto Ms. Stone while ensuring that they would reap the benefits;

e. structuring the transaction in a manner that would make it impossible for Ms. Stone to weigh or understand the nature of the transaction;

f. misrepresenting that the product was better than a mortgage loan or reverse mortgage, when in fact it was a reverse mortgage or mortgage loan, but with worse terms;

g. placing a restraint on the sale of Ms. Stone's home in the first three years of the contract;

h. failing to maintain appropriate licensure or otherwise comply with lending laws;

i. advertising and providing misleading representations regarding the rates, terms, and conditions of a mortgage loan; and

j. otherwise placing Ms. Stone in a highly lopsided and unfair transaction that benefited them while placing all costs and risks on her.

**ANSWER:** Paragraph 124 of the Complaint also consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 124 of the Complaint.

125. As described above, Defendants engaged in deceptive trade practices including by:

a. making false representations of the characteristics and benefits of the transaction, in violation of C.R.$.§ 6-1-105(1)(e);

b. disparaging the goods, services, or business of another by false or misleading representation in violation of C.R.S. § 6-1-105(1)(h);

c. making false or misleading representations of fact concerning the price of its services in violation of C.R.S. § 6-1-105(1)(l);

d. failing to meaningfully or effectively disclose material information about the transaction in order to induce Ms. Stone into the transaction in violation of C.R.S. § 6-1-105(1)(u);

e. failing to obtain necessary governmental licenses and permits, namely, appropriate residential lending licenses, in violation of C.R.S. § 6-1-105(1)(z);

f. violating C.R.S. § 38-40-105 in violation of C.R.S. § 6-1-105(1)(uu);

g. violating C.R.S. § 12-10-713 in violation of C.R.S. § 6-l-105(1)(bbb); and/or

h. engaging in unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practices in violation of C.R.S. § 6-1-105(1)(rrr).

**ANSWER:** Paragraph 125 of the Complaint also consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 125 of the Complaint.

126. Defendants' actions significantly impact the public, including by:

a. Defendants' widespread dissemination of deceptive advertising to consumers or potential consumers of Unison's goods or services that is intended to deceive consumers as to the costs and impact of the transaction.

b. Defendants' creation of confusing and deceptive liens on properties that negatively impact consumers and obscure the amount of pre-existing liens to other lienholders.

c. Defendants' practice of placing restraints on the sale and financing of real property, thereby impacting liquidity in the real estate market.

**ANSWER:** Defendants deny the allegations in Paragraph 126 of the Complaint.

127. Plaintiff is thus entitled to appropriate relief pursuant to the Colorado Consumer Protection Act, including a declaration that the contracts are invalid and void, that no amounts are owed, and an award of reasonable attorney fees and costs.

**ANSWER:** Paragraph 127 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 127 of the Complaint and deny that Debtor is entitled to the requested relief.

**THIRD CLAIM FOR RELIEF**
VIOLATIONS OF MORTGAGE LENDING REQUIREMENTS
C.R.S. §§ 38-40-101 *et seq.*

128. Ms. Stone repeats and realleges the paragraphs above and hereby incorporates the same as if set forth in full.

**ANSWER:** Defendants repeat and reallege their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

129. The product Defendants provided to Ms. Stone was a loan, in that Ms. Stone received a payment of money for which she agreed to compensate Defendants; and through which transaction Defendants typically expected full repayment plus additional funds at a later date. *See Oasis Legal Fin. Grp., LLC v. Coffman,* 361 P.3d 400, CO 2015.

**ANSWER:** Defendants deny the allegations in Paragraph 129 of the Complaint.

130. The loan was primarily for personal, family, or household use and secured by a deed of trust on residential real estate used as Ms. Stone's primary residence.

**ANSWER:** Defendants deny the allegations in Paragraph 130 of the Complaint.

131. As a result, the transaction is a residential mortgage loan under Colorado law. C.R.S. § 12-10-702(21).

**ANSWER:** Paragraph 131 of the Complaint also consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 131 of the Complaint.

132. Defendants are eligible lenders and/or mortgage loan originators under Colorado law. C.R.S. § 12-10-702(13); (14).

**ANSWER:** Paragraph 132 of the Complaint also consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 132 of the Complaint.

133. As described in detail above, Defendants engaged in prohibited activities including:

a. Knowingly advertising, displaying, distributing, or broadcasting false, deceptive, or misleading statements with regard to rates, terms, or conditions for Ms. Stone's mortgage loan, in violation of C.R.S. § 38-40-105(1)(a);

b. Making false promises or misrepresentations or concealing essential or material facts from Ms. Stone to entice her to enter into the transaction, in violation of C.R.S. § 38-40-105(1)(6);

c. Facilitating the consummation of a mortgage loan agreement that is unconscionable given the terms and circumstances of the transaction, in violation of C.R.S. § 38-40-105(l)(d); and/or

d. Knowingly facilitating the consummation of a mortgage loan transaction that violates C.R.S. § 12-10-713, in violation of C.R.S. § 38-40-105(1)(e).

**ANSWER:** Paragraph 133 of the Complaint also consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 133 of the Complaint.

134. In addition, or in the alternative, as described in detail above, the mortgage loan at issue and/or its terms was unconscionable at the time it was made. C.R.S. § 38-40-105(2).

**ANSWER:** Paragraph 134 of the Complaint also consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 134 of the Complaint.

135. As the result, Ms. Stone is entitled to and seeks all available remedies, including: (1) a declaration that the transaction is a mortgage loan; (2) a declaration that Defendants do not

have the right to enforce the contract and an order enjoining the same, (3) an order requiring Defendants to release of the deed of trust, C.R.S. § 38-40-105(2); and (4) her reasonable attorney fees and costs, C.R.S. §§ 38-40-105(3), 6-1-113(2).

**ANSWER:** Paragraph 135 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 135 of the Complaint and deny that Debtor is entitled to the requested relief.

**FOURTH CLAIM FOR RELIEF**
VIOLATIONS OF THE COLORADO CONSUMER CREDIT CODE
C.R.S. §§ 5-1-101 *et seq.*

136. Ms. Stone repeats and realleges the paragraphs above and hereby incorporates the same as if set forth in full.

**ANSWER:** Defendants repeat and reallege their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

137. Ms. Stone is a natural person.

**ANSWER:** Defendants lack sufficient information to form a belief as to the truth of the allegations in Paragraph 137 of the Complaint and therefore on that basis, denies them.

138. Ms. Stone incurred a "debt," that is, "an obligation to repay." *Oasis Legal Fin. G.P., LLC v. Coffman,* 361 P.3d 400 42, CO 2015.

**ANSWER:** Defendants deny the allegations in Paragraph 138 of the Complaint.

139. The debt was incurred for a personal, family, or household purpose.

**ANSWER:** Defendants deny the allegations in Paragraph 139 of the Complaint.

140. The debt was by written agreement in which a finance charge was made.

**ANSWER:** Defendants deny the allegations in Paragraph 140 of the Complaint.

141. The debt was secured by an interest in land.

**ANSWER:** Defendants deny the allegations in Paragraph 141 of the Complaint.

142. As a result, the transaction is a consumer loan subject to the Colorado Uniform Consumer Credit Code (UCCC). C.R.S. § 5-1-301(15)(a); *Oasis Legal Fin. G1p., LLC v. Coffman,* 361 P.3d 400, CO 2015.

**ANSWER:** Defendants deny the allegations in Paragraph 142 of the Complaint.

143. The UCCC mandates that a consumer loan other than a supervised loan cannot contain an interest rate higher than 12%. C.R.S. § 5-2-201(1).

**ANSWER:** Paragraph 143 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 143 of the Complaint.

144. A "supervised loan" is a loan in which the interest rate exceeds 12%. C.R.S. § 5-1-301(47).

**ANSWER:** Paragraph 144 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 144 of the Complaint.

145. Supervised loans must be made and held by a licensed supervised lender. C.R.S. § 5-1-301(46).

**ANSWER:** Paragraph 145 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 145 of the Complaint.

146. Defendants are not licensed as supervised lenders.

**ANSWER:** Defendants admit they are not currently licensed as supervised lenders in Colorado.

147. For all consumer credit transactions, including consumer loans, the UCCC requires certain information, disclosures, and notices to be provided to the consumer, including disclosures regarding the actual cost of the transaction. C.R.S. § 5-3-101.

**ANSWER:** Paragraph 147 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 147 of the Complaint.

148. Defendants did not provide the required information, disclosures, or notices to Ms. Stone.

**ANSWER:** Defendants deny the allegations in Paragraph 148 of the Complaint.

149. Defendants did not provide the required balloon disclosures and the contract terms do not otherwise reflect the rights Ms. Stone had under the UCCC.

**ANSWER:** Defendants deny the allegations in Paragraph 149 of the Complaint.

150. The loan violates the UCCC, including in the following ways:

a. The interest rate exceeds 12%;

b. The loan was issued by and is held by entities that are not supervised lenders; and/or

c. The loan was issued without provision of the required disclosures, information, and notices.

**ANSWER:** Defendants deny the allegations in Paragraph 150 of the Complaint.

151. Because the transaction was issued in violation of the UCCC, Ms. Stone is entitled to and seeks all available remedies under the UCCC, including a declaration that the transaction is a loan, that the contract is invalid and of no force and effect, and that no debt is owed by Ms. Stone;

and an order awarding Ms. Stone reasonable attorney fees and costs. C.R.S. §§ 5-5-109, 5-5-201 *et seq*.

**ANSWER:** Defendants deny the allegations in Paragraph 151 of the Complaint and deny that Debtor is entitled to the relief sought.

**FIFTH CLAIM FOR RELIEF**
**(IN THE ALTERNATIVE TO FOURTH CLAIM)**
VIOLATIONS OF REVERSE MORTGAGE REQUIREMENTS
C.R.S. §§ 11-38-101 *et seq.*

152. Ms. Stone repeats and realleges the paragraphs above and hereby incorporates the same as if set-forth in full.

**ANSWER:** Defendants repeat and reallege their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

153. The transaction included a written instrument evidencing or creating a nonrecourse loan secured by real property.

**ANSWER:** Defendants deny the allegations in Paragraph 153 of the Complaint.

154. The transaction provided a lump sum cash advance based on Ms. Stone's owner-occupied principal residence.

**ANSWER:** Defendants deny the allegations in Paragraph 154 of the Complaint.

155. The transaction required no partial or other payment of principal or interest until the entire loan becomes due and payable.

**ANSWER:** Defendants deny the allegations in Paragraph 155 of the Complaint.

156. Defendants regularly make loans or advances secured by interests in residential real property.

**ANSWER:** Defendants deny the allegations in Paragraph 156 of the Complaint.

157. As a result, the money provided to Ms. Stone is a reverse mortgage. C.R.S. § 11-38-102; *see also Oasis Legal Fin. G11J., LLC v. Coffman,* 361 P.3d 400, CO 2015.

**ANSWER:** Defendants deny the allegations in Paragraph 157 of the Complaint.

158. The transaction violates C.R.S. § 11-38-103 because it includes a penalty if the home is sold and the mortgage paid within three years of origination.

**ANSWER:** Defendants deny the allegations in Paragraph 158 of the Complaint.

159. The transaction violates C.R.S. § 11-38-105 because it includes finance charges that exceed the permissible rates for entities that are not licensed as supervised lenders.

**ANSWER:** Defendants deny the allegations in Paragraph 159 of the Complaint.

160. The transaction violates C.R.S. § 11-38-109 because it was issued without appropriate disclosures to the borrower, prior to closing, regarding the projected total loan cost rate for the loan.

**ANSWER:** Defendants deny the allegations in Paragraph 160 of the Complaint.

161. The transaction violations C.R.S. § 11-38-111 because it was issued without an appropriate attestation that Ms. Stone was advised by Unison to obtain independent counseling regarding the advisability of Ms. Stone entering into the transaction and that Ms. Stone either received this counseling or waived it in writing.

**ANSWER:** Defendants deny the allegations in Paragraph 161 of the Complaint.

162. Because the transaction was issued in violation of the reverse mortgage lending requirements, Ms. Stone is entitled to and seeks all available remedies, including a declaration that the contract is invalid and void, that no debt is owed, and an award of reasonable attorney fees and costs.

**ANSWER:** Defendants deny the allegations in Paragraph 162 of the Complaint and deny that Debtor is entitled to the relief sought.

**SIXTH CLAIM FOR RELIEF**
ACTION FOR DECLARATORY RELIEF - FRAUDULENT NOTARIZATION

163. Ms. Stone repeats and realleges the paragraphs above and hereby incorporates the same as if set forth in full.

**ANSWER:** The Court dismissed Debtor's sixth claim for relief. ECF No. 33. Accordingly, no response to Paragraph 163 is required.

164. Ms. Stone seeks declaratory relief, pursuant to the Uniform Declaratory Judgments Law, C.R.S. 13-51-101 *et. seq.* and C.R.C.P. 57, on the issue of whether the quit claim deed is invalid.

**ANSWER:** The Court dismissed Debtor's sixth claim for relief. ECF No. 33. Accordingly, no response to Paragraph 164 is required.

165. In requesting this declaratory relief, Plaintiff is requesting an interpretation of the rights, legal status, and relationships of the parties under the above law and facts. Such interpretation is appropriate under the provisions of the Uniform Declaratory Judgments Law, C.R.S. 13-51-101 et. seq. and C.R.C.P. 57.

**ANSWER:** The Court dismissed Debtor's sixth claim for relief. ECF No. 33. Accordingly, no response to Paragraph 165 is required.

166. The Deed of Trust and Memorandum of Unison HomeOwner Agreement purport to be notarized.

**ANSWER:** The Court dismissed Debtor's sixth claim for relief. ECF No. 33. Accordingly, no response to Paragraph 166 is required.

167. Ms. Stone did not sign the notarized documents in front of a notary.

**ANSWER:** The Court dismissed Debtor's sixth claim for relief. ECF No. 33. Accordingly, no response to Paragraph 167 is required.

168. Upon information and belief, the Unison representative that came to Ms. Stone's home was not a notary.

**ANSWER:** The Court dismissed Debtor's sixth claim for relief. ECF No. 33. Accordingly, no response to Paragraph 168 is required.

169. Ms. Stone never provided her driver's license to a notary as part of signing the Unison documents.

**ANSWER:** The Court dismissed Debtor's sixth claim for relief. ECF No. 33. Accordingly, no response to Paragraph 169 is required.

170. Ms. Stone never signed a notary book as part of signing the notary documents.

**ANSWER:** The Court dismissed Debtor's sixth claim for relief. ECF No. 33. Accordingly, no response to Paragraph 170 is required.

171. If the notary section on the Unison Deed of Trust and Memorandum of Unison HomeOwner Agreement were forged, these documents are void and of no force or effect.

**ANSWER:** The Court dismissed Debtor's sixth claim for relief. ECF No. 33. Accordingly, no response to Paragraph 171 is required.

172. Ms. Stone seeks an order from the court determining that the Deed of Trust and Memorandum of Unison HomeOwner Agreement were not properly notarized, are not a validly executed document, and are of no force or effect.

**ANSWER:** The Court dismissed Debtor's sixth claim for relief. ECF No. 33. Accordingly, no response to Paragraph 172 is required.

**SEVENTH CLAIM FOR RELIEF**
**(ALTERNATIVE TO THIRD, FOURTH, AND FIFTH CLAIMS)**
ACTION FOR DECLARATORY RELIEF - REJECTION OF EXECUTORY CONTRACT

173. Ms. Stone repeats and realleges the paragraphs above and hereby incorporates the same as if set forth in full.

**ANSWER:** Defendants repeat and reallege their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

174. Ms. Stone asserts that the contract is void and invalid for the reasons stated above. If the Court finds that the contract is valid and not a loan, Ms. Stone asserts her rights pursuant to the bankruptcy code to reject the executory contract.

**ANSWER:** Paragraph 174 of the Complaint consists of a summary of legal arguments and relief sought by Debtor to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 174 of the Complaint and deny that Debtor is entitled to the relief sought.

175. Defendants retain obligations under the contract that are not yet performed.

**ANSWER:** Paragraph 175 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 175 of the Complaint.

176. For instance, the offer letter, which Ms. Stone executed on December 19, 2018, states: "Unison **will pay** the balance of the Unison Purchase Price to you ("Unison Purchase Price Balance") when your Unison HomeOwner Agreement ends, which is typically when you sell your home." (emphasis added; original emphasis omitted).

**ANSWER:** Paragraph 176 of the Complaint purports to summarize the Offer Debtor executed on December 19, 2018, which is a document in writing and is the best evidence of what is contained therein. To the extent the allegations of Paragraph 176 contradict the Offer, they are

expressly denied. Defendants further deny the remaining allegations in Paragraph 176 of the Complaint.

177. Defendants thus retain the obligation to pay Ms. Stone the Unison Purchase Price Balance of $105,000, at such time as she sells the home or the agreement terminates.

**ANSWER:** Paragraph 177 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 177 of the Complaint.

178. To the extent that the transaction is an option contract and not a loan, Defendants also retain future obligations to determine whether to exercise their option and take relevant steps related to the exercise or termination of their option, including providing Ms. Stone notice of what it decides about exercising its option.

**ANSWER:** Paragraph 178 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 178 of the Complaint.

179. Ms. Stone therefore requests that the Court declare that the contracts at issue are executory contracts and find that Ms. Stone has rejected the contracts as is her right pursuant to 11 U.S.C. § 365(a).

**ANSWER:** Paragraph 179 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 179 of the Complaint and deny that Debtor is entitled to the relief sought.

## EIGHTH CLAIM FOR RELIEF

OBJECTION TO PROOF OF CLAIM NO. 16

180. Ms. Stone repeats and realleges the paragraphs above and hereby incorporates the same as if set forth in full.

**ANSWER:** Defendants repeat and reallege their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

181. On July 10, 2024, Unison filed Proof of Claim Number 16 in the bankruptcy case.

**ANSWER:** Defendants admit the allegations in Paragraph 181 of the Complaint.

182. The Proof of Claim sets forth that the claim is for $0.00. [Claim 16 at 2.]

**ANSWER:** Paragraph 182 of the Complaint purports to summarize the Proof of Claim, which is a document in writing and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the Proof of Claim, which speaks for itself. To the extent the allegations of this paragraph contradict the Proof of Claim, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 182 of the Complaint.

183. The Claim further, contradictorily, sets forth that Unison is due $88,352.60. [Claim 16 at 4.]

**ANSWER:** Paragraph 183 of the Complaint purports to summarize the Proof of Claim, which is a document in writing and is the best evidence of what is contained therein. Defendants deny Debtor's characterization of the Proof of Claim, which speaks for itself. To the extent the allegations of this paragraph contradict the Proof of Claim, they are expressly denied. To the extent a further response is required, Defendants deny the allegations in Paragraph 183 of the Complaint.

184. In support of the Claim, Unison attaches four contracts comprising the Unison HomeOwner Agreement and an assignment.

**ANSWER:** Paragraph 184 of the Complaint refers to the Proof of Claim and the Agreements, which are documents in writing and are the best evidence of what is contained therein. To the extent the allegations of this paragraph contradict such documents, they are expressly denied. To the extent a further response is required, Defendants admit the allegations in Paragraph 184 of the Complaint.

185. None of the contracts bear Unison's signature. As a result, they are incomplete and invalid.

**ANSWER:** Paragraph 185 of the Complaint refers to the Agreements, which are documents in writing and are the best evidence of what is contained therein. To the extent the allegations of this paragraph contradict the Agreements, they are expressly denied, and further, to the extent this paragraph states conclusions of law, no further response is required. To the extent a further response is required, Defendants deny the allegations in Paragraph 185 of the Complaint.

186. The assignment predates Ms. Stone's signature on any of the contracts. As a result, it is invalid.

**ANSWER:** Paragraph 186 of the Complaint refers to the Assignment and the Agreements, which are documents in writing and are the best evidence of what is contained therein. To the extent the allegations of this paragraph contradict such documents, they are expressly denied, and further, to the extent this paragraph states conclusions of law, no further response is required. To the extent a further response is required, Defendants deny the allegations in Paragraph 186 of the Complaint.

187. The proof of claim is based on a void and invalid contract and should therefore be disallowed.

**ANSWER:** Defendants deny the allegations in Paragraph 187 of the Complaint.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that this Court award the following relief:

a. Disallow Claim #16;

b. A declaration that the transaction at issue is a mortgage loan; and a declaration that the transaction at issue is a consumer loan or, in the alternative, a reverse mortgage;

c. In the alternative, a declaration that the contracts at issue are executory contracts subject to rejection pursuant to 11 U.S.C. § 365(a);

d. A declaration that the contracts at issue are void, invalid, unenforceable, and have no legal force or effect;

e. An injunction against enforcement and transfer or sale of the contracts at issue;

f. An order the deed of trust filed by Unison with the Weld County Clerk and Recorder is void and must be released;

g. A declaration that the conduct at issue violates the Colorado Consumer Protection Act and the other laws of Colorado as set forth herein;

h. Recoupment, set off, and/or other equitable relief, as appropriate;

i. An award of reasonable costs and attorney fees to Ms. Stone; and

j. Such further relief as to the Court seems just.

**ANSWER:** Defendants deny that Debtor is entitled to judgment and further deny that Debtor is entitled to the below relief requested:

k. Defendants deny that Debtor is entitled to the relief requested.

l. Defendants deny that Debtor is entitled to the relief requested.

m. Defendants deny that Debtor is entitled to the relief requested.

n. Defendants deny that Debtor is entitled to the relief requested.

o. Defendants deny that Debtor is entitled to the relief requested.

p. Defendants deny that Debtor is entitled to the relief requested.

q. Defendants deny that Debtor is entitled to the relief requested.

r. Defendants deny that Debtor is entitled to the relief requested.

s. Defendants deny that Debtor is entitled to the relief requested.

t. Defendants deny that Debtor is entitled to the relief requested.

## AFFIRMATIVE DEFENSES

Defendants hereby allege the following separate and distinct defenses and affirmative defenses without conceding that Defendants necessarily bears the burden of proof or persuasion:

### FIRST AFFIRMATIVE DEFENSE

### (FAILURE TO STATE A CLAIM)

Debtor's claims are barred, in whole or in part, because she fails to plead a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

### (STATUTE OF LIMITATIONS)

Debtor's claims are barred, in whole or in part, by the applicable statutes of limitation.

### THIRD AFFIRMATIVE DEFENSE

### (LACHES)

Debtor's claims are barred, in whole or in part, by the doctrine of laches.

**FOURTH AFFIRMATIVE DEFENSE**

**(ESTOPPEL)**

Debtor's claims are barred, in whole or in part, but the doctrine of estoppel.

**FIFTH AFFIRMATIVE DEFENSE**

**(WAIVER)**

Debtor's claims are barred, in whole or in part, but the doctrine of waiver.

**SIXTH AFFIRMATIVE DEFENSE**

**(NO INJURY)**

Debtor's claims are barred, in whole or in part, because she suffered no injury or damages as a result of any conduct by Defendants.

**SEVENTH AFFIRMATIVE DEFENSE**

**(SAFE HARBOR)**

Debtor's claims are barred, in whole or in part, under the safe harbor doctrine, including but not limited to Colo. Rev. Stat. § 6-1-106(1)(a), to the extent Defendants' alleged conduct is permitted by federal and/or state law.

**EIGHTH AFFIRMATIVE DEFENSE**

**(NO CAUSATION)**

Debtor's claims are barred, in whole or in part, because to the extent Debtor suffered injury, it was not caused by Defendants' alleged conduct.

**NINTH AFFIRMATIVE DEFENSE**

**(NO CAUSE OF ACTION FOR UNCONSCIONABILITY)**

Debtor's first cause of action is barred, in whole or in part, because unconscionability is a potential defense to enforcement of a contract, not a cause of action.

**TENTH AFFIRMATIVE DEFENSE**

**(NO UNCONSCIONABILITY)**

Debtor's first cause of action is barred, in whole or in part, because the Agreements Debtor entered into are not unconscionable.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(NO CONSUMER CREDIT TRANSACTION)**

Debtor's first cause of action is barred, in whole or in part, because the Agreements Debtor entered into are not a consumer credit transaction and no reasonable consumer would have been led to believe as much.

**TWELFTH AFFIRMATIVE DEFENSE**

**(NO UNFAIR OR DECEPTIVE TRADE PRACTICE)**

Debtor's second cause of action is barred, in whole or in part, because Defendants did not engage in an unfair or deceptive trade practices.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(NO SIGNIFICANT PUBLIC IMPACT)**

Debtor's second cause of action is barred, in whole or in part, because the challenged conduct did not significantly impact the public.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(NO RELIANCE)**

Debtor's second cause of action is barred, in whole or in part, because Debtor did not rely on the statements she challenges as allegedly false or misleading.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(NO LOAN)**

Debtor's third, fourth, and fifth causes of action are barred, in whole or in part, because the Option is not a loan or a mortgage.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(ADEQUATE REMEDY AT LAW)**

Debtor's requests for equitable relief are barred, in whole or in part, because she possesses an adequate remedy at law via the claims for money damages she has asserted in this action.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(COMPLIANCE WITH LAW)**

Defendants met or exceeded the requirements of all applicable laws, regulations, and standards applicable to Defendants.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(GOOD FAITH/CONFORMANCE WITH APPLICABLE STANDARDS)**

With respect to all matters alleged in the amended complaint, Defendants at all times acted in good faith and in conformance with all applicable government and industry standards, thus precluding any recovery by Debtor.

**NINTEENTH AFFIRMATIVE DEFENSE**

**(CONTRIBUTION)**

Any and all harm alleged by Debtor can be attributed to several causes, and the damages for the harm, if any, should be apportioned among the various causes according to the contribution of each cause to the harm sustained.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(SEVERAL LIABILITY)**

Should Debtor prevail against Defendants, Defendants' liability is several and limited to

their own actionable segments of fault, if any.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(OFFSET)**

Defendants are entitled to an offset to the claims set forth in the Complaint sufficient to diminish or defeat Debtor's recovery thereunder.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(FAULT OF OTHERS)**

If Debtor suffered or sustained any loss, injury, damage, or detriment, the same was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct of third parties, and not Defendants.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(FAULT OF DEBTOR)**

If Debtor suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, and/or activities of Debtor and not by Defendants. Debtor's claims are barred or reduced by Debtor's own negligence, mistake or fraud.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

**(FAILURE TO MITIGATE DAMAGES)**

Debtor has failed, in whole or in part, to mitigate her alleged damages.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

**(UNJUST ENRICHMENT)**

Debtor would be unjustly enriched if allowed to recover under the Complaint.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(UNCLEAN HANDS)**

Debtor's claims are barred by the doctrine of unclean hands.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(LACK OF MALICE)**

Defendants specifically deny that they acted with any willfulness, oppression, fraud or malice towards Debtor or others.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

**(MISTAKE)**

Any alleged acts or omissions of Defendants that give rise to Debtor's claims are the result of innocent mistake.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

**(LACKS ARTICLE III STANDING)**

Debtor lacks Article III standing to assert her claims against Defendants.

**THIRTIETH AFFIRMATIVE DEFENSE**

**(RATIFICATION/CONSENT)**

Debtor ratified or consented to the alleged actions and conduct of Defendants.

**THIRTY-FIRST DEFENSE**

**(RESERVATION OF ADDITIONAL DEFENSES)**

Defendants hereby reserve the right to amend their Answer to raise additional defenses as they become available or apparent to it through discovery in this matter or otherwise.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants pray that:

1. Debtor takes nothing by way of the Complaint;

2. Defendants are awarded their costs of suit incurred herein;
3. Defendants be awarded their attorney's fees to the extent provided by law;
4. Judgment be entered in favor of Defendants; and
5. Defendants be granted such other relief as the Court deems just and proper.

Dated: October 1, 2025

Respectfully submitted,

**MARKUS WILLIAMS YOUNG & HUNSICKER LLC**

By: *<u>/s/ Lacey S. Bryan</u>*
James Markus (CO #25065)
Lacey S. Bryan (CO #51908)
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
jmarkus@markuswilliams.com
lbryan@markuswilliams.com

**SCALE LLP**

By: *<u>/s/ Jamie D. Wells</u>*
Jamie D. Wells (CA# 290827)
Alexander J. Gershen (CA #291929)
2261 Market Street, Ste 85604
San Francisco, CA 94114
Telephone (415) 735-5933
jamie.wells@scalefirm.com
agershen@scalefirm.com

*Counsel for Real Estate Equity Exchange, Inc., Unison Agreement Corp., Odin New Horizon Real Estate Fund LP, and Unison Investment Management, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 1, 2025 pursuant to L.B.R. 9013-1 and 9036-1 a copy of the foregoing **AMENDED ANSWER TO ADVERSARY PROCEEDING COMPLAINT & OBJECTION TO PROOF OF CLAIM NO. 16** was electronically filed and served via e-mail on the following:

**Via CM/ECF**

Shennan Kavanagh
skavanagh@nclc.org

Alex Witteveld
awitteveld@colegalserv.org

Dated: October 1, 2025

*/s/ Jamie D. Wells*
Jamie D. Wells
SCALE LLP
2261 Market Street, Ste 85604
San Francisco, CA 94114
Telephone (415) 735-5933
Jamie.wells@scalefirm.com